TIDBALL, Appellant, v. MILLER, et al, Respondents

(25 N. W.2d 554)

(File No. 8874. Opinion filed December 19, 1946.)
Rehearing Granted February 20, 1947.

**Morrison & Skaug,** of Mobridge, for Appellant.

**N. E. Wanous,** State's Atty., of Dupree, and **R. F. Williamson,** of Aberdeen, for Respondents.

RUDOLPH, P.J.   J. B. Tidball appealed to the circuit court of Ziebach County from certain action of the Board of Equalization of Ziebach County.   The circuit court dismissed Mr. Tidball's appeal upon the grounds that the appeal was not taken within the time provided by law and he has now appealed to this court.

Ziebach County consists of unorganized territory and the County Board is authorized to raise and lower individual assessments as provided in SDC 57.0407.   Under the provisions of SDC 57.0405 a county board of equalization consists of the county commissioners or a majority of them with the county auditor; it is provided that the board shall meet on the first Tuesday in July and may continue in session and adjourn from time to time not exceeding 15 days. The first Tuesday in July in the year 1945 fell on July 3d in that year.   However, the County Board of Equalization did not convene as such Board until July 6, 1945.   The publish-

ed record of the meeting of July 6. 1945 shows that on that date the County Board of Equalization raised and lowered the assessment of a large number of tracts of real property and included in such tracts were the tracts owned by Mr. Tidball, the appellant. The published record of the meeting of July 6th also contains the following: "J. B. Tidball filed a written objection of various land owned by him in Ziebach County to valuations listed in written protest." The next published record, so far as here material, is as follows:

"July 18, 1945 Board met as Board of Equalization with Brammer, Henderson and Miller present.

"The day was spent on hearing cases which were brought before the Board.

"Board adjourned to August 7, 1945."

In the published record of the Board of County Commissioners under date of August 8, 1945 appears the following: "The minutes of previous meeting were read and meeting of July 18 was amended to read: 'Written complaints of * * * J. B. Tidball * * * and others was considered and values were left as Equalized by Board.'" With reference to the meeting of July 18th it should be noted that by notices dated July 14, 16th and 18th the appellant, Tidball, was directed to appear on July 18, 1945 and show cause why the assessed valuation of the lands owned by him should not be raised as indicated in the said notices. The procedure adopted was, to say the least, novel, as it appears from the published record that the assessments had been raised on July 6, several days before the notices to appear and show cause were dated. All of the proceedings were published under the general heading "Official Proceedings of the Board of County Commissioners, Ziebach County." The published record of the meetings of July 6 and July 18 appeared in an official newspaper of the county on August 2, 1945. The published record of the meeting of August 8 appeared on August 23, 1945.

SDC 57.0411 provides that appeals to the circuit court may be taken from a decision of the county board of equalization within the same time as appeals from the board of county commissioners. SDC 12.0619 provides that an appeal

may be taken to the circuit court from a decision of the board of county commissioners "within twenty days after the publication of the decision of the board. * * *" The trial court held that the publication of the record of the meetings of July 6 and 18 started the running of the twenty-day period within which the appeal might be taken, and since the appeal was not taken until September 4, 1945 it was not within the time allowed by law. Appellant contends that the twenty-day period did not start to run until August 23, 1945, the date of the publication of the record of the meeting of August 8, and that the appeal was taken well within the twenty-day period.

It appears from the record that the published minutes of the meetings of the Board of Equalization as such do not correctly reflect the action of that Board. It is undisputed in this record that the Board of Equalization did in fact deny the objections made by appellant. This is not a case, therefore, which presents the question of whether failure to act within a fixed time after which action might not be taken constitutes a decision, within the meaning of the statute, from which an appeal lies. In this case there was no failure to act, the Board did act; it denied appellant's objection to the increases it had proposed in the assessments of his property. However, such action was never recorded or published unless the attempted amendment of the minutes of the meeting of July 18 at the commissioner's meeting on August 8, and the subsequent publication of such action might be considered a publication of the action of the Board of Equalization. Whether such action at the commissioner's meeting and the subsequent publication thereof would start running the statutory period within which an appeal might be taken from the action of the Board of Equalization denying appellant's objections to the valuations placed upon his property, we need not determine. If such publication did start the running of the statutory period this appeal was taken within time, on the other hand, if such publication may not be considered a publication of the action of the Board of Equalization, there has never been any publication of the action of such Board deny-

ing appellant's objections and the statutory period has not yet commenced to run.

■ The question remains whether the denial of appellant's objection constitutes the real grievance which he asserts in this proceeding. We think it does. Quite obviously the raising of the assessments on July 6 was not intended as a final decision of the board. If such had been intended as a final decision there would have been no object or purpose in the notices dated July 14, 16 and 18 requiring the appellant to appear and show cause on July 18 why the assessments as made by the assessor should not be raised. Without confirming the propriety or regularity of the procedure adopted by the board we observe that such procedure was substantially as follows: First, raise the assessments, second, serve notice to show cause why the assessments should not be raised, third, hear any objection made and, fourth, in the event of objection rule upon the objection, and if the objection is ruled adversely to the objector the assessment as raised becomes the final action of the board. It is clear, we believe, that this procedure required some action by the board upon the objection before there was any final decision by the board upon the valuation to be placed upon the objector's property. Such being the procedure it is evident that the adverse ruling upon appellant's objection constitutes the grievance.

The action of the trial court dismissing appellant's appeal from the Board of Equalization is reversed.

All the Judges concur.

POLLEY, J., not sitting.