TIDBALL, Appellant, v. MILLER, et al., Respondents

(27 N. W.2d 587)

(File No. 8874. Opinion filed May 21, 1947.)

For former opinion, see 25 N. W.2d 554.

**Morrison & Skaug,** of Mobridge, for Appellant. ·

**N. E. Wanous,** State's Atty., of Dupree, and **R. F. Williamson,** of Aberdeen, for Respondents.

SICKEL, P.J.   This is an appeal from the Board of Equalization of Ziebach county.   The circuit court dismissed the appeal and Tidball has appealed to this court.   Here the decision of the circuit court was reversed.   Tidball v. Miller, 71 S. D. 442, 25 N. W.2d 554.   Then the respondent filed a petition for rehearing, which was granted.

The right of appeal from the Board of Equalization is provided by SDC 57.0411.   The time for appeal is limited by SDC 12.0619 which provides:   "Such appeal shall be taken within twenty days after the publication of the decision

of the board * * *." The question in this case is whether the appeal was taken within the time allowed by the statute.

█ James B. Tidball owned about 3,000 acres of land in Ziebach county, assessed for taxation in 1945. All the land is located in unorganzied territory having no local board of equalization, and therefore the assessment lists were returned to the county auditor. The County Board of Equalization met on the first Tuesday in July, being the third day of the month, pursuant to SDC 57.0405. On July 6th, acting as a local Board of Equalization, it raised or lowered the individual assessments of more than 500 tracts of land. Tidball owned forty-six tracts, twenty-nine of which were raised in value, and in seventeen instances the valuations were left as assessed. The raised valuations were recorded on the minutes of the Board on July 6th. Thereafter, Tidball filed written objections to all the valuations of his property as fixed by the assessor, and to all valuations raised by the County Board. He petitioned for the reduction of all valuations to what he claimed was the true value of his land. On July 14, 16 and 18, the Board sent Tidball four separate notices requiring him to appear on July 18 and show cause why the land assessed in his name "should not be assessed and subject to taxation" at the several valuations to which some of the tracts had been raised by the Board on July 6. These were in effect notices of hearing on the petition previously filed by Tidball as to valuations raised by the Board on July 6. These notices made no mention of that part of. Tidball's petition which related to assessed valuations made by the assessor and not raised by the Board. Tidball appeared before the Board on July 18th. The minutes of the Board recite that "the day was spent on hearing cases which were brought before the Board" but contains no reference to the disposition of Tidball's petition. The existence of the Board of Equalization terminated on that day by expiration of the fifteen-day statutory limitation. SDC 57.0405. Such adjournment of the Equalization Board by statutory limitation without recorded action on the objections made by Tidball

was, to all legal as well as practical intents and purposes, a denial and rejection of his application, from which an appeal might be taken under SDC 57.0411. Sumner v. County of Colfax, 14 Neb. 524, 16 N. W. 756; Burns v. McNally, 90 Iowa 432, 57 N. W. 908; Beadle County v. Eveland, 43 S. D. 447, 180 N. W. 65. To hold otherwise under the facts in this case would place in the Board of Equalization the power to deprive a person of the right of appeal altogether.

The record of the Board of Equalization was published on August 2d, 1945, and the appeal was not taken until September 4th. If that publication constituted "publication of the decision of the Board" the appeal was not taken within the twenty days allowed by statute and should be dismissed. Respondent contends that the publication of the silent record was a publication of the decision denying Tidball's petition for reduction in the assessed valuation of his land.

■ SDC 12.0619, which regulates the manner of appeal from County Board of Equalization to the circuit court, was formerly § 5887 of the Code of 1919. That statute provided that the appeal must be taken "within twenty days after the decision of the board." No notice of the decision was required. Chapter 160, S. L. 1921, amended this statute by inserting the words "the publication of" following the word "after." No change was made in the revision of 1939. The statute as amended requires that notice of an adverse decision by the Board shall be given to any person having a matter properly before it. Such notice is to be given by recording the decision in the proceedings of the Board, and by publication of the record. Until such notice is given the twenty-day statute of limitations does not commence to run.

■ The publication of the offical proceedings of July 6th did not give notice of the decision made by the Board. We therefore adhere to the conclusions reached in the former opinion to the effect that the Board of Equalization denied Tidball's petition for a reduction in the assessed valuation of his land; that such decision was not published on August

2d, 1945, and that the right of appeal was not barred by the statute of limitations.

The judgment of the circuit court is reversed.

ROBERTS and SMITH, JJ., concur.
RUDOLPH, J., (concurs specially.)
POLLEY, J., not sitting.

RUDOLPH, J. (concurring specially).

It is held by the majority that the final adjournment of the Board without action on Mr. Tidball's objections "was, to all legal as well as practical intents and purposes, a denial and rejection of his application, from which an appeal might be taken under SDC 57.0411." The effect of such holding is that the adjournment of the Board without action on Mr. Tidball's objections is a "decision" of that Board from which an appeal might be taken. If such constitutes a decision, it seems to me that such decision was published on August 2 when there appeared the publication of the minutes of the meeting of July 18 which minutes disclose precisely the facts which the majority holds constitutes a decision. In other words, the majority opinion holds that what the Board did with reference to the Tidball objections, as reflected by the published minutes of its meetings, constitutes a decision from which an appeal lies, yet the majority holds that the publication of the very facts which it holds constitute the decision is not a publication of such decision. I cannot agree.

Originally I prepared an opinion wherein it was attempted to meet the issues upon which the case was argued and submitted. This opinion did not get full concurrence of other members of the court, and was laid aside when all agreed that it "was undisputed in this record that the Board of Equalization did in fact deny the objections made by appellant." It was upon this premise that the published opinion was based, and it was this premise that was questioned by respondent in the petition for rehearing. I am now of the view that we were not justified in stating that the record, without dispute, disclosed that the Board

did deny appellant's objections, without first determining that the record was properly amended to show such fact. The opinion originally prepared dealt with the regularity and effect of the actions of the Board in amending its record and for that reason I now submit that opinion, without the statement of facts which appear in the original published opinion, as my view of the proper disposition of the issues presented.

The first issue to be determined is the validity of the amendment of the record of July 18 made at the meeting on August 8. Respondent contends that the statute creating the County Board of Equalization which provides that such Board shall meet on the first Tuesday in July and continue in session and adjourn from time to time not exceeding fifteen days, is mandatory and that the Board ceased to exist for all purposes at the end of the fifteen-day period. The Board could not after the fifteen-day period equalize assessments. The statute in this respect is mandatory, but it is equally clear, I believe, that it does not cease to exist so completely that its identity is entirely destroyed. Obviously the Board does not cease to exist in the capacity of an adverse party in the event an appeal is taken from any of its decisions as the statute expressly provides for an appeal. While the statute does not expressly perpetuate the Board for the purpose of correcting its minutes to speak the truth, nevertheless, I believe that implicit in the requirement that a record be kept is the authority to correct such record whenever a mistake therein is discovered, at least until there are intervening rights of third persons acquired under the erroneous record in good faith. "It is generally held that the clerk of a town or other municipal corporation has the right and power to amend the minutes or records of the proceedings of the municipality, so long as he has the custody thereof, according to the facts and his knowledge of their truth, where, through inadvertence, mistake, or neglect, the record of the proceeding is incomplete or defective." Annotation, 3 A. L. R. 1315. Such being the rule I have no hesitancy in holding that the Board of which the clerk is a member still has power to amend its

minutes, which is a mere matter of form, after the expiration of its power to act upon a matter which is of the essence of the purpose for which the Board was created.

Respondents next contend that the record was not amended by the Board of Equalization but by the Board of County Commissioners. I accept the view that the two boards are separate and distinct entities, and that one cannot act for the other. However, the record discloses that the action was not taken by the Board of County Commissioners acting as such. It is obvious from the record that in this instance there was no careful attempt to keep the records of the two boards separate. The minutes of both boards are published under the general heading "Official Proceedings of the Board of County Commissioners, Ziebach County." Records of the meetings of both boards were apparently kept and published in sequence according to date, and in one publication appears the records of both boards in such sequence. However, the meeting of July 18 related solely to the Board of Equalization. It was the minutes of this meeting which were read on August 8, at which meeting a majority of the County Commissioners and the auditor were present who constituted the Board of Equalization. SDC 57.0405. When the minutes of this meeting, which related solely to the Board of Equalization, were read and submitted for action at a meeting composed of the members of the Board of Equalization, and only such members, I believe any action taken on such minutes must be considered the action of the Board of Equalization.

From the foregoing it appears that academic only is the discussion in the briefs upon the question of whether failure to act within a fixed time after which action might not be taken constitutes a decision, within the meaning of the statute, from which an appeal lies. In this case there was no failure to act, the Board did act; it denied appellant's objection to the increases it had proposed in the assessments of his property. The question remains whether the denial of appellant's objection constitutes the real grievance which he asserts in this proceeding. I think it does. Quite obviously the raising of the assessments on July 6 was not intended as a final decision of the Board. If such had been

intended as a final decision, there would have been no object or purpose in the notices dated July 14, 16 and 18 requiring the appellant to appear and show cause on July 18 why the assessments as made by the assessor should not be raised. Without confirming the propriety or regularity of the procedure adopted by the Board I observe that such procedure was substantially as follows: First, raise the assessments, second, serve notice to show cause why the assessment should not be raised, third, hear any objection made, and fourth, in the event of objection rule upon the objection, and if the objection is ruled adversely to the objector, the assessment as raised becomes the final action of the Board. It is clear, we believe, that this procedure required some action upon the objection by the Board before there was any final decision by the Board upon the amount of the valuation to be placed on the objector's property. Such being the procedure it is evident that the adverse ruling upon appellant's objection constitutes the grievance.

It follows from the above that the publication on August 23, 1945, of the decision of the Board of Equalization ruling adversely upon the objection of appellant, was the publication of the decision of the Board which started the running of the twenty-day period within which an appeal might be taken.

The action of the trial court dismissing appellant's appeal from the Board of Equalization is reversed.