RAPID CITY AREA SCHOOL DISTRICT
NO. 51-4, Petitioner,

v.

PENNINGTON COUNTY AUDITOR,
Helen Daughenbaugh, Pennington County Board of Equalization, and Warner Hickey, Neil Van Sickle, Lloyd St. Pierre, Leo Hamm, Lloyd Rypkema, and Helen Daughenbaugh, Individually and as Members constituting the Pennington County Board of Equalization, Respondents.

No. 12897.

Supreme Court of South Dakota.

Argued Sept. 13, 1979.

Decided Oct. 2, 1979.

Wynn Gunderson, of Gunderson & Palmer, Rapid City, for petitioner.

James H. Wilson and Gordon Verne Goodsell, of Wilson, Bottum, Olson, Goodsell & Nash, Rapid City, for respondent, Pennington County.

MORGAN, Justice.

This unfortunate confrontation pits the Rapid City Area School District No. 51–4 (school board) against the Pennington County Board of Commissioners sitting as a county board of equalization (county board) in a contest to ascertain which entity is to determine the fiscal requirements of the Rapid City School District. The Pennington County Auditor is caught in a crossfire. Subsequent to the school board's adoption of a proposed budget for 1979–80 school year, the county board met and lowered the taxable percentage of true and full value for the county from forty percent in the previous year to thirty percent. This action resulted in a shortfall of $293,117.00 to the school board's budget. Upon application of the school board to this court, an alternative writ of mandamus issued directing the county board to set a percentage of true and full valuation to be applied against the taxable property of their county such as would be sufficient to meet the budget of the school board and further directing the county auditor to spread a levy in mills over the taxable property of the school district sufficient to raise the money requested subject to legal mill levy limitations. The county board and auditor having made their return on the alternative writ and the court having considered the same and having heard the argument of counsel, we dissolve the writ directed to the county board, and direct the county auditor to spread the levy based on sixty percent of true and full valuation for the determination of the levy computation.

Before proceeding with a discussion of the merits, it will be helpful to outline, in general terms, South Dakota's statutory assessment and equalization procedure.

Every county is authorized to appoint a county director of equalization whose function is to determine the value of all taxable property within the county. See SDCL 10–3. After all real and personal property is valued at its true and full value in money (SDCL 10–6–33), the director is to list the property and deliver the assessment rolls to local boards of equalization not later than the fourth Monday in May. SDCL 10–3–28.

These local boards are statutorily directed to meet on the fourth Monday of May "for the purpose of equalizing the assessment of property in each township, town or city, and such equalization board shall immediately proceed to examine, ascertain, and see that all taxable property in the respective township, town, or city has been properly placed upon the assessment roll and has been duly valued by the assessor." SDCL 10–11–13. Then, on or before the first Monday of June, the clerk of the township, town or city equalization board is to deliver the assessment roll to the director of equalization, certifying that the assessment roll is correct and should be accepted by the board of county commissioners. SDCL 10–11–21. According to SDCL 10–11–25, the county commissioners, along with the county auditor, are to constitute the county board of equalization of the assessment of property. Sitting as the board of equalization, these officials are to hear appeals, determine the percentage of true and full value to be used as taxable value, and equalize assessments of property. SDCL 10–11–25. In determining the taxable percentage, the board of equalization is limited by SDCL 10–6–33 which provides that no more than sixty percent of the true and full value may be considered taxable value upon which the levy shall be made and applied and taxes computed. Prior to 1977, this statute gave no discretion to the board in determining

the taxable percentage, providing simply that sixty percent was to be the taxable percentage in all cases. The county board of equalization is to meet annually on the third Tuesday in June and may adjourn no later than the first Tuesday in July to carry out these duties. SDCL 10–11–25.

The county director of equalization is then to calculate any changes made by the county board of equalization and make abstracts of the real and personal property lists and forward copies to the department of revenue on or before the third Monday of July. SDCL 10–11–41.

At the same time this process of assessment and equalization is proceeding, the school districts are formulating their budgets. According to SDCL 13–11–2, the school board is to develop a proposed budget for the next fiscal year to be prepared for consideration at the regular May meeting. This proposed budget is to be published in an official newspaper not later than July 15 together with notice of a hearing on the budget. This hearing must be held before August 1. Then, prior to September 1, the school board must approve a budget and, by resolution, must adopt a levy in dollars sufficient to meet the budget. This levy must be reported to the county auditor by September 1. SDCL 10–12–29. The amount of the levy must be certified to the county auditor on or before the first day of October. SDCL 10–12–7. The county auditor must then spread a levy in mills over the taxable property of the school district sufficient to raise the money requested by the school district subject to the legal mill limitations. The mill levy is computed by dividing the budget by the taxable valuation (true and full value times taxable percentage). However, the number of mills which can be applied with respect to various taxing entities and even various funds within the entities, is limited by statute. The mill levy is then applied proportionately to each taxpayer's taxable property within the school district to determine his individual tax liability. All taxes become due on the first day of January of each year next following the levy. SDCL 10–21–4.

In accord with these statutory mandates, the school board developed a proposed budget for the 1979–80 school year which was approved by the school board on May 22, 1979. In the initial steps of the process, the school board had determined "that there shall be no increase to the average taxpayer over that paid in 1978–79 in support of the public schools." The proposed budget totaled $18,131,614.00 including an item for contingency fund in the amount of $565,856.00. On June 8, 1979, the proposed budget was published and notice was given for a public hearing. The hearing was held on June 19, 1979. No objection to the budget was registered at the hearing by the county board of equalization. The final budget (denominated the annual budget) adopted on August 28, 1979, totaled $18,-385,987.00 with the contingency fund reduced to $509,167.00

In the meantime, on the assessment and valuation levels, the county assessors had apparently succeeded in bringing true and full value of property county-wide, rural and urban, into closer conformity, resulting in an increase in assessed valuation in the county in the amount of approximately $43,250.00. Pennington County Commissioners began sitting as a board of equalization on June 19, 1979, and concluded on July 3, 1979. On that last day, the county board adopted a resolution "to set the taxable percentage of full and true valuation at thirty percent, to be applied to all classes of property." From the context of the published minutes, that resolution was an attempt to set the taxable valuation at a point equal to the previous year. However, there is no indication that the thirty percent figure would accomplish that end. Indeed, if it had, this dispute would not have arisen.

The county board's action resulted in a shortfall to the school board's budget in the amount of $293,117.00. The school board appealed the action to the State Board of Equalization which dismissed the appeal on motion of the county board on the ground that the statute under which the appeal was taken had been repealed. On August 24, 1979, the school board initiated this orig-

inal proceeding in mandamus requesting that the county board be required to roll back the taxable percentage to the 1978 level, thus allowing the county auditor to spread the budget on the tax roll on the property in the school district.

We first discuss the county board's decision to set the taxable value at thirty percent of true and full. The authority under which the county board claims to act is Chapter 86, Session Laws of 1977, which first amended SDCL 10–6–33 to provide that all property should be assessed at true and full value but "not more than" sixty percent as opposed to "only" sixty percent of such assessed value was to be taken and considered as taxable value. Next, the enactment amended SDCL 10–11–25 by inserting direction to the county board of equalization to determine at its annual meeting the percentage of true and full value to be used as taxable value as well as to carry out the previous duties of the board to hear appeals and equalize the assessments. Finally, the enactment repealed subdivision (3) of SDCL 10–11–47 which had authorized appeal to the State Board of Equalization of property between counties assessed below the state average. Counsel for the county board urges that these actions of the 1977 Legislature delegate to the county boards *sole* authority to set taxable value in their respective counties. We disagree.

As counsel for the county board points out in his brief, the practice of assessing officials prior to the 1977 enactments was to appraise property at lower than true and full value and then apply the sixty percent figure in order to control the spending of various taxing units which were bound by maximum mill levies. Counsel argues, in effect, that the 1977 legislation places the imprimatur of the legislature on this practice because, although it requires the assessment of true and full value, it authorizes the various county boards to continue to limit the taxing authority of the taxing entities by setting the percentage of true and full value for tax purposes *without any guidelines whatsoever*. To accept this interpretation would raise a serious constitu-

tional issue. Without doubt, the legislature is the authority to first determine the percentage of taxable value that shall be used, but for the legislature to delegate this authority to the county boards without adequate guidelines would clearly be unconstitutional. However, where we can resolve an issue without passing on a constitutional question, we are required to do so. *Aberdeen Ed. Ass'n v. Aberdeen Bd. of Ed. Ind. Sch. D.*, 215 N.W.2d 837 (S.D.1974); *In Re Snyder's Estate*, 74 S.D. 14, 48 N.W.2d 238 (1951); *Haas v. Independent School Dist. No. 1 of Yankton*, 69 S.D. 303, 9 N.W.2d 707 (1943). We therefore prefer to take the alternative route and view this strictly as a matter of statutory interpretation.

The amendments which seemingly delegate broad authority to the county board deal with *equalization*. Boards of equalization have traditionally been created primarily to set a norm for equalizing assessments of property so that inequities will not result between taxpayers whose properties are in the same class. These boards "can exercise only such powers as are expressly granted to [them] by statute and statutes conferring power and authority upon the county board of equalization in these circumstances are strictly construed." *Municipal University of Omaha v. County Bd. of Equal.*, 181 Neb. 881, 151 N.W.2d 924 at 926 (1967). No doubt exists that equalization efforts of the various boards have been severely hampered in the past by the practice of assessing property below its true and full value. To upset an overassessment one had to prove that it was in excess of true and full value. Often, an assessment would be below true and full value but far in excess of the value of comparable property. It seems clear that the 1977 enactments were designed to alleviate this problem and we hold therefore that it was the intent of the legislature to give the county boards the authority to set a percentage of true and full value for the sole purpose of equalizing values between properties in the county. Where the percentage set by the county board is sufficient to meet the fiscal needs of taxing entities whose budgetary

authority is founded on legislative grant, the percentage set is immaterial. But, where the percentage adopted by the board results in a shortfall to the budget of the taxing entity, the county board's action is *ultra vires* and void. School districts have clearly been granted the authority to levy taxes so that funds can be raised sufficient to cover their budget. No statutes exist which manifest a legislative intent to allow county boards to share in that authority. Neither does the statutory scheme contemplate that the discretion granted the county boards to set a taxable percentage should be used to undermine the levying authority of the school districts which the state constitution directs be granted to them. See S.D.Const., art. VIII, §§ 1 and 15.

It follows that the county board's action in this case is not binding on either the school board or the county auditor. We need not therefore require the county board to do anything further and, indeed, we have grave doubt that we could. Thus, the writ is dissolved as to the county board. This decision dispenses with the need for us to address the county board's contention that the remedy of mandamus is improper in this case.

▮ The writ is granted, however, as to the county auditor. The question which necessarily arises from our decision is whether, in spreading the levy, the county auditor should use the forty percent of true and full value which was previously set for 1978 or the sixty percent maximum set by the legislature. As counsel for the county board admits, the percentage of true and

full value has no real effect on taxes levied because the higher the percentage is set, the lower the mill levy will be after the budget requirements are applied. In other words, given the same true and full value and the same budgetary requirements, the mill levy computed at thirty percent would be twice the mill levy computed at sixty percent but both would result in identical tax levies.

We perceive, however, that the authority of the county board to set the percentage of true and full value under SDCL 10–11–25 is an annual determination for the purpose of equalization for that particular year. We hold, therefore, that lacking a valid determination for the 1979 taxing period, the county auditor should use the legislative limitation of sixty percent in computing the mill levy and spreading the taxes on the books. We emphasize that this holding relates only to the county auditor's computation of the mill levy for the purpose of raising funds to cover the school district's budget. With regard to the general county budget, the county auditor should compute the mill levy using a taxable percentage of thirty percent.*

WOLLMAN, C. J., concurs.

FOSHEIM, J., concurs specially.

DUNN and HENDERSON, JJ., dissent.

FOSHEIM, Justice (concurring specially).

In *Salem Independent School Dist. v. Circuit Court*, 60 S.D. 341, 350, 244 N.W. 373, 377 (1932), this court indicated that the

---

* The author of the opinion deems it necessary to answer questions raised by the dissent and offers the following comments.

My brother Dunn, Justice, obviously misapprehends the thrust of my analysis. The legislature is the constitutionally designated body to place limitations on taxing authorities. It has exercised this authority by imposing both the sixty percent true and full value guideline *and* the mill levy limitations on various taxing entities and funds. For the legislature to delegate this authority to another body, legislative or executive in nature, without spelling out some criteria, would be unconstitutional. To answer Justice Dunn's questions: First, the sixty percent legislative mandate is not to be ignored;

and second, the imposition of a mill levy limitation is a legislative action clearly within the discretion of the legislature. Look at the other side of the next question. If the legislature intended to let some intermediate body control school board budgets by controlling the percentage of true and full value, why the necessity for any mill limitation?

Finally, with regard to the concern expressed by Justice Dunn, that the opinion favors school boards over other units of government, I would simply point out that the record does not show any other units complaining of inadequate levy and this court can grant relief only to those who seek it.

duty of a county auditor in spreading a mill levy to meet the needs of a taxing district is ministerial in nature. Accordingly, the duty of the county auditor here is an appropriate subject of mandamus.

The majority opinion points out that school districts in this state are authorized to levy taxes to raise funds sufficient to cover their budgets, independent of any control by county boards. This practice is inconsistent with the scheme which exists between the Board of Regents and the legislature, wherein a proposed budget for higher education in this state is dependent upon an appropriation by the legislature. See SDCL Title 4. Whether the county system is unsatisfactory and should be changed to conform with the state system is a matter which should be addressed to the legislature.

DUNN, Justice (dissenting).

I would quash the extraordinary writ of mandamus in its entirety.

The majority opinion would dissolve the writ as to the Pennington County Board of Equalization (County Board) in one breath and in the next breath order the County Auditor to spread a mill levy based upon the legislative limitation of a taxable value of no more than 60% of true and full value in place of the 30% valuation set by the County Board. This has the exact effect of mandating the County Board to increase the valuation for tax purposes from the 30% set to 60%. The majority opinion is based upon the incorrect theory that the County Board's action in setting taxable value at 30% was ultra vires and void.

The County Board was acting pursuant to SDCL 10–11–25 as amended on March 11, 1977. It reads as follows:

The county commissioners, or a majority of them, with the county auditor shall constitute a board for the equalization of the assessment of property. Before entering upon the discharge of his duties each member of the board shall take an oath fairly and impartially to perform his duties, as a member thereof. Such board shall meet for the purpose of hearing appeals, *determining the percentage of true and full value to be used as taxable value* and equalizing the assessments of property, annually, on the third Tuesday in June, at the office of the auditor and may continue in session and adjourn from time to time until all properly filed appeals have been determined and equalization completed and shall adjourn in any event, no later than the first Tuesday in July. (emphasis added)

True, this statute is an equalization statute wherein a County Board of Equalization acts on cases of inequities between taxpayers of a certain class, but also for the first time since the enactment of the true and full value statute (SDCL 10–6–33) it provides that a County Board of Equalization is to determine *"the percentage of true and full value to be used as taxable value."* SDCL 10–11–25.

Contrary to the majority opinion's deduction that this had something to do with equalization among classes, I believe the Legislature meant exactly what it set out in the statute, and a County Board of Equalization was given the duty to equalize this taxable value when the actual value of the land was increased from 60% of true and full value for tax purposes to *true* and *full value.* We must read the two statutes together because they were both amended by the Legislature on the same day, and by doing so, there is no other logical conclusion to be reached.

If the majority opinion is correct and school boards have unbridled authority to levy taxes to raise funds sufficient to cover their budgets, I would like to ask this question: What if a school board levied taxes in excess of 60% of the assessed value of land? If a school board can ignore the legislative authority delegated to the County Board of Equalization to set taxable value, it would follow that school boards could also ignore the 60% limit set directly by the Legislature. In this regard, I have another question: If the Legislature had desired to give school districts power carte blanche to meet whatever budget they determined necessary, why was the mill levy limitation im-

posed in the first instance? I am convinced that the majority decision effectively circumvents this statutory limitation in that now a school district has power to dictate the percentage of true and full value. It takes no mathematical genius to figure out that a levy of 40 mills on 600 million dollars (60%) would produce the same tax dollars as 80 mills on 300 million dollars (30%). Who cares about lower levies if the percentage of true and full value is high enough?

The mill levy limitation has been considered so sacred that it takes a three-fourths vote of the people at a special election to raise a mill levy under SDCL 10–12–36, but with control of the taxable value of property up to 60%, a school board can avoid the mill levy limitation with impunity.

In this regard, the legislative history of the amendment of SDCL 10–6–33 in 1977 is most enlightening. This began as House Bill 508, which read in pertinent part:

> All property shall be assessed at its *true and full value* in money but only *thirty per cent* of such assessed value shall be taken and considered as the taxable value of such property upon which the levy shall be made and applied to the taxes computed. (emphasis added)

Thus, the clear legislative intent was to put some limitation on taxable value when the assessment went to "true and full value." After several sessions of the House Taxation Committee, which were attended by the President of the Rapid City School Board and attorneys and representatives of South Dakota school boards wherein they voiced objections to this flat limitation applying to all counties, a compromise was reached wherein the limitation was "up to 60%" and the authority was given to County Boards of Equalization to set the taxable

value in each county. The school people still objected to any limitation, but the bill passed out of committee on February 9, 1977, by an 8–5 vote, and the final product was the amendment of SDCL 10–11–25 and SDCL 10–6–33. The majority opinion speaks of legislative intent, but I fail to find any evidence that actions of the Legislature were studied or discussed as a basis for its conclusion.[1]

There can be no question of the legislative intent to put some brake on the unbridled spending of school boards and other units of government, and as long as that brake is applied reasonably and not arbitrarily or fraudulently, the court should not interfere and order the county boards to expand their original percentage of taxable value.

The County Board was aware that the assessors had already assessed all property in Pennington County "at its true and full value" as provided in SDCL 10–6–33, as amended on March 11, 1977, and that such true and full value had not been reduced by 40% as provided by SDCL 10–6–33 prior to the amendment.

The County Board concluded most reasonably that when total taxable property values increased, a lower percentage of true and full value for tax purposes was necessary. Pursuant to the power specifically granted it in SDCL 10–11–25, the County Board determined that the percentage of true and full value to be used as taxable value would be 30%. This was lower than the 40% used the previous year when the Board only had 60% of true and full value with which to work. This procedure by the County Board was not illegal, fraudulent or arbitrary. The County Board was simply following the directions given it by the Legislature.

1. The majority decision throws out a threat of unconstitutionality of a statute delegating authority to County Boards of Equalization to set tax valuation, but goes off on an interpretation of the statute as to what the Legislature "must have intended." In the face of the clear language of the statute and the equally clear legislative history that the Legislature did intend to delegate this authority, the opinion now resorts to a footnote again threatening the unconstitu-

tionality of the statute. If the majority feels that the statute is unconstitutional, I suggest it say as much and permit the Legislature to set a definite limitation as was its original intention in 1977. I also suggest that the opinion discuss the constitutionality of the statute wherein, according to this opinion, the Legislature has delegated authority to school boards to levy taxes to cover their budgets without regard to tax valuation or mill levy limitation.

As a result of this action, the nearly 19 million dollar budget of the Rapid City Area School District (School District) was short approximately $50,000. After the County Board had acted pursuant to its statutory authority, the School District amended its budget request (as it had a right to do) so that the total shortage would be some $293,117. After the County Auditor's computation, which included an increase in taxable value in Pennington County in 1979 as compared to 1978, the short-fall in the school budget was reduced to $241,511. In the final school budget request is a line item contingency fund of $509,167 that is over and above all operating expenses. This contingency fund would offset the short-fall and still leave a contingency fund of $257,655. Contrary to the contentions of the School District, this contingency fund is not earmarked for certain purposes. The statute governing contingency funds is SDCL 13–11–2.1, which states:

> In preparing the school district budget, the school board may include a line item for contingencies. The line item shall be included in the annual budget and shall not exceed five per cent of the total school district budget. The school board may by resolution *transfer contingency funds to any budget category except capital outlay.* (emphasis added)

In this regard, the concurring opinion entirely misconstrues *Salem Independent School District v. Circuit Court,* 60 S.D. 341, 244 N.W. 373 (1932). It is true that the actions of a county auditor are ministerial in nature; however, I am convinced that when the *Salem* case and SDCL 13–11–3 are read together, the School District's argument that the county auditor must spread a levy to meet whatever budget is submitted by the school is incorrect. Rather, the clear import of both the *Salem* decision and the statute is merely to restrain a county auditor from changing, at his whim, the budget figure or the percentage of true and full value as submitted to him by the taxing authorities. Simply, the auditor is being informed to "do what you have been told to do and do not make any changes."

To read the statute as commanding an auditor to meet whatever the school board desires in the way of funds is, I submit, an incorrect reading. A proper reading is that a school district's proposed budget, the mill levy limitations and the percentage of true and full value as determined by the County Board of Equalization must be considered together in determining the final amount of the school district's budget. The only import of the statute is that the county auditor has no discretion to change any of the above specified figures after the taxing procedure is completed.

The School District has failed to meet its burden of showing that the action of the County Board in setting taxing value at 30% was fraudulent, arbitrary or without "logical relationship to some tax purposes." The tax valuation originally came within $50,000 of meeting the School District's requested budget. It is only $241,511 short after the amendment to the budget which has a $509,167 contingency fund upon which to draw. The School District has not met its burden of showing that 30% true and full value makes it impossible to perform its statutory function of providing a "thorough and efficient system of common schools." The School District has made no attempt to pare its budget or to indicate what programs might be terminated by a smaller budget. In short, the School District has made no showing that would justify the extraordinary writ of mandamus. The School District is simply asking this court to move into the legislative process and substitute its judgment for that of the County Board.

The majority opinion in expanding taxable values in Pennington County up to 60% has given relief that was never requested, and it goes on to state that the 30% valuation set by the County Board is legal for all units of county government except school boards! Now the court is not only setting taxable value for the counties but is discriminating as to one unit of county government over another. This does not demon-

strate any expertise in the field of taxation or any awareness of the body politic.[2]

This court has business enough without venturing into the field of setting tax valuations lacking any showing of fraudulent or arbitrary action of the County Board.

I would quash the writ of mandamus in its entirety.

HENDERSON, Justice (dissenting).

Mandamus is a special proceeding, as distinguished from action, and will not issue where there is a plain, speedy, and adequate remedy available in the ordinary course of law.

The petitioner has these remedies available: 1) use a portion of its approximately one-half million dollar contingency fund; 2) decrease or readjust its budget up until October 1, 1979; 3) call for a special election; 4) adopt a supplemental budget "when moneys are available." It refuses to avail itself of these remedies obviously preferring litigation.

This case comes before us in fever. An October 1, 1979, deadline is thrust upon this court. This instant justice is dangerous as it does not allow for mature reflection and academic consideration. The prayer for relief is unclear, impossible of performance, and urges this court to command action which is unauthorized and illegal in law. Mandamus cannot control discretion and petitioner seeks to control the discretion of respondents.

I agree with the majority opinion that dissolves the alternative writ as to the county board, but once this conclusion is reached the proceeding should end instantly and not entangle this court in a political battle between two subdivisions of government in this state.

This court has cleverly circumvented the County Board's authority to set the taxable percentage of true and full value on the taxable property in the school district. What the court impliedly acknowledges it cannot do directly (order the County Board to raise the taxable percentage), it has miraculously managed to accomplish indirectly.

The petitioner prepared its budget; the respondent County Board determined the percentage of true and full value to be used as taxable value (30%), which left a "shortfall" of approximately $50,000. Thereafter, the petitioner amended its budget pursuant to SDCL 13–11–3.1. This increased the budget by nearly $300,000 after the respondent County Board had responsibly and faithfully exercised its bounden statutory duty. It is my view that it has been the petitioner School Board that has been unreasonable, arbitrary, and capricious and not the respondent County Board.

This court, by compelling the county auditor to spread a mill levy of sixty percent true and full value on the taxable property in the school district, is ordering an official to do an act that neither of the litigants have requested. This relief is outside the pleadings, arguments, and issues of this extraordinary proceeding. The majority opinion, through its directive, has given birth to a new concept which would turn this court into a taxing authority and relegate it to a super equalization board. Not only is such action unconstitutional, but its net effect is to hold that the County Board serves an idle function.

I do not believe that the duties of county boards of equalization are so perfunctory that they must meet the whim and dictates of school boards in South Dakota. If so, it is the death knell to county government in South Dakota.

**2.** The majority opinion takes solace in the fact that no other units of government have complained of this double standard of taxable values in Pennington County. Of course, it should be noted that these units of government have not as yet seen this opinion and could hardly anticipate that the court was going to set two taxable valuations for Pennington County! Further, if the Legislature cannot constitutionally delegate authority to another body to set tax valuations, how come County Boards of Equalization can set tax valuations for other units of county government but not school boards?

The medicine prescribed in the majority opinion is worse than the ailment. I would grant respondent's motion to quash the alternative writ (which I feel should not have been granted in the first instance) including the command to the county auditor.

The majority opinion violates uniformity and equality of taxation, and is therefore discriminatory. Rapid City Area School District No. 51–4 encompasses not only a portion of Pennington County, but also a portion of Meade County. I wish to reflect by my own table the determinations of the Meade and Pennington County Boards of Equalization. The record discloses:

TAXABLE PERCENTAGES SET BY
COUNTY BOARDS

| Meade County | | Pennington County | |
|---|---|---|---|
| 1979 | 31% | 1979 | 30% |
| 1978 | 41% | 1978 | 40% |

TAXABLE PERCENTAGES BY
MAJORITY OPINION

| Meade County | | Pennington County | |
|---|---|---|---|
| 1979 | 31% | 1979 | 60% |

Historically, adjoining Boards of Equalization in counties wherein a school district overlaps attempt equalization out of a spirit of fair play, cooperation, and simple justice to their respective resident taxpayers. As I see it, taxpayers in Meade and Pennington Counties will bear unequal burdens and I therefore express that such a determination by this court violates the state and federal constitutional equal protection clause.

The court, having fragmentized and dissected Pennington County into a situation where the Rapid City School District's property is valued at sixty percent true and full, while the county budget is governed by a taxable percentage of thirty percent, strengthens my position that it autonomously dove into taxation waters without a constitutional swimsuit.