In the Matter of the Appeal From the REFUSAL OF the STATE BOARD OF EQUALIZATION TO HEAR the APPEAL OF the LAKE POINSETT AREA DEVELOPMENT ASSOCIATION.

Nos. 13803, 13807 and 13814.

Supreme Court of South Dakota.

Argued Nov. 17, 1982.

Decided March 2, 1983.

Robert Arneson, Hamlin County State's Atty., Hayti, and Irving A. Hinderaker of Austin, Hinderaker & Hackett, Watertown, for appellant Hamlin County Bd. of Equalization.

John Dewell, Asst. Atty. Gen., Pierre, for appellant Secretary of Revenue; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

George S. Mickelson of McCann, Martin & Mickelson, P.C., Brookings, for appellees Lake Owners; Richard J. Helsper of McCann, Martin & Mickelson, P.C., Brookings, on brief.

HALL, Circuit Judge.

This is an appeal concerning a dispute over the calculation of the assessed valuation and the taxable percentage imposed upon two classes of property, agricultural and nonagricultural, in Hamlin County, South Dakota for 1981. We affirm in part and reverse in part.

Lake owners (appellees) are 327 individuals who own 276 parcels of real estate adjacent to Lake Poinsett in Hamlin County. Part of the real estate is located in Norden Township and the balance is located in Estelline Township.

Lake owners filed timely written objections to the real property assessment with the Norden Township Board and the Estelline Township Board, sitting in their capacities as boards of equalization. On April 14, 1981, the Norden Township Board transferred the objections to the Hamlin County Board of Equalization. On April 15, 1981, the Estelline Township Board disapproved lake owners' objections.

On May 8, 1981, lake owners appeared before the Hamlin County Board of Equalization and presented the objections to the real property assessment for property in both Norden and Estelline Townships. On May 19, 1981, the Hamlin County Board of Equalization raised the assessed valuation of agricultural land by 30 percent and lowered the assessed valuation of Lake Poinsett lots by 10 percent. The Hamlin County Board of Equalization also established the taxable percentage of assessed valuation for agricultural property at 35 percent and for nonagricultural property at 39 percent.

On June 8, 1981, lake owners filed a complaint and petition for alternative writ of mandamus in circuit court requesting a writ requiring the Hamlin County Board of Commissioners, et al. (appellants) (1) to reassess all agricultural classified property within Hamlin County to the same percentage of full and true value as nonagricultural property for the 1981 assessment and (2) to set one equal percentage for the taxable year, 1981, for all classes of property within Hamlin County.

On the day following the commencement of the mandamus action, the lake owners filed an equalization appeal from the action of the Hamlin County Board of Commissioners with the State Board of Equalization. The State Board declined to hear the appeal by reason of the pendency of the mandamus action in circuit court. The lake owners then appealed from the action of the State Board to the circuit court.

The county board moved to dismiss the mandamus action. On September 14, 1981, the circuit court entered an order dismissing the lake owners' first cause of action.

Pursuant to stipulation of the parties, trial of the remaining issues in the mandamus action and in the appeal from the action of the State Board of Equalization was had on September 23, 1981. This is an appeal by the Hamlin County Board of Commissioners et al. (Commissioners) as defendants in the lower court and the Secretary of Revenue, as intervenor, from that trial de novo proceeding. The circuit court found that certain actions of the county director of equalization were improper and resulted in a disproportionate assessment of the lake owners' property. The court further determined that the action of the Hamlin County Board of Equalization in fixing more than one taxable percentage

for property within the county for tax purposes was not permissible and that the lake owners were paying a disproportionate share of the tax burden in Hamlin County.

The first issue we must address is whether the lake owners are proper parties to this action and whether the circuit court had jurisdiction to hear their equalization appeal. The circuit court held in the affirmative, and we affirm.

Commissioners argue that the lake owners are not "persons aggrieved" within the meaning of SDCL 10–11–42 and, therefore, the circuit court was without jurisdiction to hear their appeal or enter judgment in their favor. SDCL 10–11–42 provides the remedy to appeal from the county board of equalization's decision to "[a]ny person, firm or corporation, public or private, feeling aggrieved by the action of the county board of equalization relative to the assessment of its property. . . ." Commissioners argue that this court has held, in construing the predecessor to SDCL 10–11–42, that a court does not have jurisdiction to hear an appeal to correct the valuation of property of one other than the complainant. *In re Ericksen,* 69 S.D. 446, 11 N.W.2d 141 (1943) (*appeal dismissed,* 322 U.S. 712, 64 S.Ct. 1269, 88 L.Ed. 1554 (1944)); *Beveridge v. Baer,* 59 S.D. 563, 241 N.W. 727 (1932). In *Ericksen,* the complainant objected to the assessment of property belonging to another. He did not maintain that his property was assessed too high, but only that the other property was assessed too low. This court held that the circuit court was without jurisdiction to entertain the purported appeal.

■ Lake property owners have not attempted to increase agricultural assessments nor requested that the taxable percentage on agricultural property be increased. The lake owners have only sought to be treated equally with the agricultural property owners.

Therefore, we are of the opinion that the lake owners are not attempting to appeal the assessment of the property of another. Accordingly, we affirm the decision of the circuit court that the lake owners are "per-

sons aggrieved" within the meaning of SDCL 10–11–42 and that the circuit court did have jurisdiction to hear their equalization appeal.

The next issue we must consider is whether appellees are entitled to relief by way of a writ of mandamus compelling appellants to comply with statutory directives regarding property taxation. The circuit court held in the negative, and we affirm.

Appellees petitioned this court for review of this issue. They argue that a writ of mandamus should issue to compel the county tax assessor to assess agricultural property at its true and full value.

■ Mandamus is not a proper remedy in this case because appellees seek to direct the exercise of judgment or discretion in a particular way on the part of the county tax assessor and because there is a plain, speedy and adequate remedy in the ordinary course of law.

> Mandamus is employed to compel the performance, when refused, of a ministerial duty, this being its chief use. It is also employed to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either.

*Midwest Oil Company v. Youngquist,* 69 S.D. 461, 463, 11 N.W.2d 662, 663 (1943) (quoting *Wilbur v. United States ex rel. Kadrie,* 281 U.S. 206, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930)). *Accord Breckweg v. Knochenmus and May,* 81 S.D. 244, 133 N.W.2d 860 (1965); *State ex rel. Cook v. Richards,* 61 S.D. 28, 245 N.W. 901 (1932); *First Nat. Bank v. Hirning,* 48 S.D. 417, 204 N.W. 901 (1925); *Farmers' Loan & Trust Bank v. Hirning,* 42 S.D. 52, 172 N.W. 931 (1919); *Stephens et al. v. Jones et al.,* 24 S.D. 97, 123 N.W. 705 (1909). This court addressed a similar issue involving property tax officers in *Beadle County v. Eveland,* 43 S.D. 447, 180 N.W. 65 (1920). In that case, the plaintiffs initiated an action seeking a

peremptory writ of mandamus commanding the state tax commission to order a reassessment of real property in the City of Huron. The plaintiffs alleged that the city had arbitrarily increased the valuation of certain property situated in the Huron business district, thereby discriminating against the owners of that property. The court was presented with conflicting evidence upon the question of whether the assessed valuation as equalized of the two classes of property were disproportionate when compared with their true values. The court found there was not such a discrepancy as to indicate an intentional noncompliance with rules governing assessment of property. The evidence tended in no manner to establish any willful intent on the part of the Equalization Board of the City of Huron to arbitrarily disregard the law in making the equalization. Therefore, the court held the tax officers had discretion in valuing the property and that it was beyond the power of the court to command defendants to order a reassessment of the property in any case wherein the statute gives them a discretion.

As in *Eveland,* there is no intentional noncompliance in the case at bar. The record supports Commissioners' position that they have attempted to comply with statutory directives regarding property taxation through their agricultural land productivity analysis and through the use of assigned values provided by the Department of Revenue. Consequently, the Hamlin County tax officers have acted, and thus mandamus is not a proper remedy to direct the exercise of judgment or discretion in a particular way.

Mandamus also is not a proper remedy because there is a plain, speedy and adequate remedy in the ordinary course of law. SDCL Chapter 10–11 clearly establishes a system of appeal of assessment decisions. SDCL 10–11–42 authorizes appeal from a decision of the county board of equalization to the State Board of Equalization and SDCL 10–11–44 authorizes appeal from the county board to the circuit court. Moreover, an appeal under SDCL 10–11–44 authorizes a de novo hearing on such appeal.

The state board and the court may correct the tax assessments. We are of the opinion that such a procedure provides a plain, speedy and adequate remedy in the ordinary course of law, and therefore affirm the circuit court that appellees are not entitled to relief by way of mandamus.

The third issue we must address is whether the Constitution and laws of South Dakota allow plural percentages for taxable valuations of different property classes, specifically agricultural property and nonagricultural property. The trial court held in the negative, and we reverse.

Two provisions in the South Dakota Constitution are basic to our determination of this issue. Article VIII, § 15, provides in pertinent part, "The Legislature is empowered to classify properties within school districts for purposes of school taxation, and may constitute agricultural property a separate class. Taxes shall be uniform on all property in the same class." This is read in conjunction with Article XI, § 2, which provides:

To the end that the burden of taxation may be equitable upon all property, and in order that no property which is made subject to taxation shall escape, the Legislature is empowered to divide all property including money and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only.

Additionally, SDCL 10–6–31 provides that, "For the purposes of taxation, all property is hereby classified into two separate classes, to wit: (1) Agricultural property; (2) Nonagricultural property." SDCL 10–11–25, in part material here, authorizes the county commissioners with the county auditor constituting the board of equalization to meet "for the purpose of hearing appeals, determining the percentage of true and full value to be used as taxable value

and equalizing the assessments of property . . . ."

■ Although SDCL 10–11–25 refers to the "percentage" of true and full value, this does not indicate that plural percentages for taxable valuations of different property classes are not allowed. Except where a contrary intention plainly appears, words used in the singular number include the plural. SDCL 2–14–6. Considering the two constitutional provisions and the statutory law regarding property classes and taxes, it becomes clear the legislature did not intend to allow only one percentage for all classes of property. The specific injunction, both in Article VIII, § 15 and in Article XI, § 2, is that taxes shall be uniform on all property in the same class. Therefore, so long as the taxable percentage used on all property of the same class is the same, the constitutional mandate is fulfilled.

In support of the contention that Hamlin County is not authorized to set different taxable percentages for agricultural and nonagricultural property, appellees rely upon *Rapid City Area School District v. Pennington County Auditor,* 284 N.W.2d 308, 311 (S.D.1979), where this court stated:

No doubt exists that equalization efforts of the various boards have been severely hampered in the past by the practice of assessing property below its true and full value. To upset an overassessment one had to prove that it was in excess of true and full value. Often, an assessment would be below true and full value but far in excess of the value of comparable property. It seems clear that the 1977 enactments [SDCL 10–11–25] were designed to alleviate this problem and we hold therefore that it was the intent of the legislature to give county boards the authority to set a percentage of true and full value for the sole purpose of equalizing values between properties in the county.

Appellees misinterpret the holding of that case. In the same paragraph we noted, "Boards of equalization have traditionally been created primarily to set a norm for equalizing assessments of property so that inequities will not result between taxpayers whose properties are in the same class." *Id.* at 311.

■ Therefore, we hold that the Constitution and laws of South Dakota allow plural percentages for taxable valuations of different property classes, specifically agricultural property and nonagricultural property.

Next, we address whether the South Dakota Constitution, Article XI, § 2, requires uniformity of taxation between classes of property as well as within property classes. The trial court held in the affirmative, and we reverse.

This question is an offspring of the previous issue, and it may be approached from a historical standpoint. For a considerable period of time, any attempt to distinguish agricultural land from nonagricultural land was met with disfavor and was rejected under Article XI, § 2. *Chicago R.I. & P.Ry. Co. v. Young,* 60 S.D. 291, 244 N.W. 370 (1932); *Simmons v. Ericson,* 54 S.D. 429, 223 N.W. 342 (1929). In *Great Northern Ry. v. Whitfield,* 65 S.D. 173, 272 N.W. 787 (1937), decided after the amendment to Article VIII, § 15 of the South Dakota Constitution, which empowered the legislature to classify property within school districts for purposes of school taxation and permitted the classification of agricultural property as a separate class, the court held that it could no longer abide by the decision of *Simmons v. Ericson* and spoke of the severity of the adverse conditions affecting agriculture in this state. Since that time, this court has consistently held to the uniformity within class rule. *Baken Park Inc. v. County of Pennington,* 79 S.D. 156, 109 N.W.2d 898 (1961); *In re Robinson,* 73 S.D. 580, 46 N.W.2d 908 (1951); *Commercial State Bank of Wagner v. Wilson,* 53 S.D. 82, 220 N.W. 152 (1928); *Sioux Falls Savings Bank v. Minnehaha County,* 29 S.D. 146, 135 N.W. 689 (1912).

■ Therefore, we hold that the South Dakota Constitution does not require uniformity of taxation between classes of property as well as within property classes.

Next, we consider whether the assessment procedures employed by the Hamlin County Director of Equalization complied substantially with the requirements of SDCL 10–6–33 *et seq.* The trial court held in the negative, and we reverse.

All property is to be assessed at its true and full value in money.[1] SDCL 10–6–33. The South Dakota legislature has enumerated specifically the factors to be used in determining the value of agricultural land. SDCL 10–6–33.1 provides:

In fixing the true and full value in money of property, under the provisions of § 10–6–33, the value of agricultural land as defined by § 10–6–31, and which has been used primarily for agriculture use for at least five successive years immediately preceding the tax year for which assessment is to be made shall· be based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;[2]

(2) Soil, terrain, and topographical condition of property;

(3) The present market value of said property as agricultural land as determined by the factors contained in subdivisions (1), (2), (4) and (5) of this section;

(4) The character of the area of place in which said property is located; and

(5) Such other agricultural factors as may from time to time become applicable.

The Director of Equalization for Hamlin County used the market data approach and cost approach to determine the land value of all property in Hamlin County except agricultural land. The method of valuation of agricultural land is determined by a multiple stage process as follows:

1. A soil survey map is used to determine how many acres of each soil type is contained in each such parcel of land.

2. Each soil type in the parcel is multiplied by a factor which is a productivity rating, with the result representing the equivalent acres of number one land. This productivity rating would assign the value of "1" to the best land and a value of ".5" to land that would produce only 50% as much as the best land. This productivity rating is a constant, does not change, and was established more than twenty years ago.

3. The equivalent acres is [sic] then multiplied by the assigned value for an acre of number one land and the result is the assessed valuation.

Furthermore, in 1970, experts from South Dakota State University assisted the Department of Revenue in establishing land capability ratings. The soil survey and land capability ratings are used in the valuation process.

In arriving at the assigned value for an acre of land, the sales were submitted to the Department of Revenue by the assessor after the assessor determined that the criteria of an arm's length transaction had been met. Each sale is converted into dollars per acre. The dollars per acre over the preceding three year period were arrayed in ascending order and the median dollar per acre sale is selected. After this, the Department of Revenue and the Director of Equalization for Hamlin, Brown, Clark, Codington, Day, Deuel, Grant, and Roberts Counties met to determine whether agricul-

---

1. "True and full value" is defined as "the usual cash selling price at the place where the property to which the term is applied shall be at the time of the assessment." SDCL 10–6–1.

2. SDCL 10–6–33.2 provides:

Capacity of land in agricultural use to produce agricultural products shall be based on average yields under natural conditions, in the case of land producing crops or plants, and on the average "acres per animal unit," in the case of grazing land; said average shall affect each operating unit and shall be based on the ten-year period immediately preceding the tax year in issue. In determining such capacity to produce, the county director of equalization and/or the county board of equalization must take into consideration yields, and/or carrying capacity, as determined by the soil conservation service, the agricultural stabilization and conservation service, the extension service, federal land bank and private lending agencies dealing with land production capacities.

tural land valuations should be adjusted. For the years 1980 and 1981, the directors decided that agricultural land should not be raised. No similar agreements are made as to nonagricultural land.

These dollar amounts are multiplied by the acres on the property abstract and are then assigned a total value for the county by the Department of Revenue. In the case of Hamlin County for 1980, this was $99,236,500 or $310.64 per acre and in 1981, $111,805,000 or $350.00 per acre. The county director of equalization did not actually use this $350.00 per acre in 1981, but instead used the $204.04 per acre value that she had used in 1980. The Hamlin County Board, however, increased the value by 30 percent so that the total county value became $84,634,814 or $265.00 per acre which is $27,170,186 or $85.00 less than the value recommended by the Department of Revenue. This adjustment brought the average value per acre of agricultural land to approximately 76 percent of the average assigned value per acre received from the Department of Revenue for 1981. At the same time the county board raised the agricultural valuation by 30 percent, it lowered the valuation of Lake Poinsett lots by 10 percent. The result of this adjustment was to bring the assessed valuation of agricultural land in line with the assessed value of nonagricultural property.

In 1981, an assessment reappraisal for all platted lots with resident structures outside the corporate limits was conducted. There was no reappraisal of agricultural land in 1981 for reassessment purposes.

The Hamlin County Board of Equalization pursuant to SDCL 10–11–25 fixed taxable percentages for 1981 at 35 percent for agricultural property and 39 percent for nonagricultural property.

██ Substantial compliance with legislative directives is sufficient in determining assessed valuation. *Mortenson v. County of Stanley,* 303 N.W.2d 107 (S.D.1981); *Knodel v. Board of County Commissioners of Pennington County,* 269 N.W.2d 386, (S.D.1978). This court's scope of review of a trial court's decision in a trial de novo of an assessment matter is whether the decision of the trial court was "clearly erroneous." *Yadco, Inc. v. Yankton County,* 89 S.D. 651, 237 N.W.2d 665 (S.D.1975). Our review of the record satisfies us that the assessment procedures used by Hamlin County complied substantially with the statutory requirements and that the trial court erred in finding to the contrary.

The assessment procedures used in the case at bar are not significantly different from the procedures approved by this court in *Mortenson v. County of Stanley,* 303 N.W.2d 107 (S.D.1981). In *Mortenson,* the Stanley County Director of Equalization primarily relied upon comparable sales and a soil survey in determining the assessed valuation of the plaintiff's agricultural land. That information was incorporated into the information and assessment guidelines established by the Department of Revenue. The Stanley County Director of Equalization then utilized the resulting Department of Revenue figures and applied those figures to the descriptions and soil survey maps from the taxable acres in Stanley County. This court sustained that procedure in the face of the plaintiffs' arguments that the director of equalization had failed to consider several factors in determining the true and full value of their property.

The lake owners contend strenuously that Hamlin County failed to sufficiently consider the market value of agricultural land in the assessment process. We have held that the market value of agricultural land may be considered by county directors of equalization in assessing such land. *County of Butte v. South Dakota State Board of Equalization,* 263 N.W.2d 140 (S.D.1978); *Hot Springs Indep. Dist. v. Fall River Landowners,* 262 N.W.2d 33 (S.D.1978). In the companion cases of *County of Butte* and *Hot Springs,* the appellants argued that SDCL 10–6–33.1 resulted in a determination of capitalization of return on the land and that any consideration of value based upon sales violated the statutory formula. This court affirmed the decision of the trial court in *County of Butte* that SDCL 10–6–

33.1 "does not preclude or prohibit the consideration of market value and that comparable sales are a factor that taxing authorities could consider . . ." 263 N.W.2d at 141. By so holding, this court did not imply that market value factors were an absolute requirement under SDCL 10–6–33.1. Therefore, the lake owners' contention that market value was not sufficiently considered in the valuation process must fail.

The lake owners' contention also fails because it is clear that Hamlin County and the Department of Revenue did consider the market value of the agricultural land in the assessment process. Hamlin County submitted sales ratio cards on a quarterly basis to the Department of Revenue and the Department used the ratios in determining a median dollar per acre value for each county.

Consequently, we find that the assessment procedures employed by Hamlin County complied substantially with the requirements of SDCL 10–6–33 *et seq.*, and we reverse the trial court's findings in that regard.

Next, we must consider whether the decision by the directors of equalization for various counties at a joint meeting not to raise agricultural land values was a violation of SDCL 10–12–33.1. The trial court held in the affirmative, and we reverse.

SDCL 10–12–31.1 requires an adjustment of levies for school purposes and the level of assessment when there is a variance of more than five percent in the sales to assessment ratio as determined pursuant to SDCL 10–11–55 for nonagricultural property and is determined pursuant to SDCL 10–11–57 for agricultural property. This equalization and adjustment of levies and assessed values provided for by SDCL 10–12–31.1 is something which took place after the fact of the assessment and in no way was intended to impinge upon the authority and responsibility of the director of equalization to assess all property subject to taxation.

The Department of Revenue contends that this joint meeting was entirely permissible in view of SDCL 10–1–15, which provides that the Secretary of Revenue:

"shall have power to exercise general supervision over the administration of the assessment and tax laws of the state, over all boards of review and equalization, and all other assessing officers in the performance of their duties, to the end that all assessments of property may be relatively just and equal in compliance with the laws of this state; . . ."

■ Although we have serious reservations concerning the joint meeting of the directors of equalization, we hold that the joint meeting was not a violation of SDCL 10–12–31.1.

The last issue that we must consider is whether the State Board of Equalization was correct in refusing to hear the appeal of the appellees, who commenced an action in circuit court for relief on their valuations prior to filing notice of appeal with the South Dakota Board of Equalization.

The trial court did not specifically address the question of the propriety of the State Board's action except in Conclusion IV, which states:

[T]he remedy of mandamus should be used only where there is not a plain, speedy and adequate remedy in the ordinary course of law. If the mandamus action was the only action before the court and if Plaintiffs had not appealed the assessment the mandamus would lie. Since full relief can be granted Plaintiffs in the appeal, mandamus should not issue to require the setting of one taxable percentage.

SDCL 10–11–42 authorizing appeals from the county board to the state board reads in part as follows:

Nothing herein shall prevent an appeal to the circuit court as provided in § 10–11–44, but an appeal to either tribunal [State Board of Equalization] shall exclude an appeal to the other.

This court in the case of *South Dakota Education Association v. Dromey,* 85 S.D. 630, 188 N.W.2d 833 (1971), held that SDCL 10–11–42 is intended to prevent appeals to the State Board of Equalization following an appeal to the circuit court.

The taxpayers chose their remedy, and whether or not mandamus was the correct action they should be left with that remedy, since to do otherwise would have permitted a hearing before the State Board of Equalization with the right of appeal and also the prescheduled hearing on the mandamus question. The taxpayers could then have been in the circuit court on each of the two proceedings.

The judgment of the circuit court is affirmed in part and reversed in part.

All the Justices concur.

HALL, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.