**Harold TELKAMP and Edward Telkamp, Trustee, Appellees,**

v.

**SOUTH DAKOTA STATE BOARD OF EQUALIZATION, Appellant.**

No. 18035.

Supreme Court of South Dakota.

Argued Feb. 9, 1993.

Decided April 27, 1994.

Rehearing Denied May 25, 1994.

Mark Barnett, Atty. Gen., David D. Wiest, Asst. Atty. Gen., Pierre, for appellant.

Alan F. Glover of Denholm and Glover, Brookings, for appellees.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUE

Following a July 18, 1991, hearing regarding the valuation of two parcels of property owned by Appellees (Telkamps), the South Dakota State Board of Equalization (Board) upheld the assessment calculations of Beryle Sessions, Director of Equalization, Brookings County. On review, the circuit court reversed the assessment. Board appeals asking if the State Constitution and statutes of the State of South Dakota allow preferential treatment of agricultural land. On de novo review, we find the assessment statutorily permissible and reverse the circuit court, remanding for reinstatement of the Board's decision.

### FACTS

The Telkamp family initially owned in excess of a quarter section of land in Brookings County. In recent years, large portions of this agricultural property have been sold to commercial developers, leaving Harold Telkamp with 3.844 acres and Edward Telkamp as trustee for 88.18 acres *located in the city of Brookings, Brookings County, South Dakota.* In 1991, the Board assessed Harold's land at $3,285 per acre and Edward's land at $2,875 per acre.[1] Prior to this assessment, both parcels were assessed below $400 per acre. Because of recent high dollar commercial sales of agricultural land within the city of Brookings, ranging from $1,314 to $9,325 per acre, the Board elevated the values of agricultural property *within the city limits of Brookings* which could be sold for commercial, residential, or industrial purposes.

Both the Telkamps and the Board have stipulated that the land in question is agricultural and has been for at least five years. They agree that the highest and best use for the land would be commercial, industrial, or residential and that the land will eventually be sold for that purpose, rather than for agricultural use. However, if the Board's decision was reversed, parties agreed that the land would be assessed at $500 per acre. Such reversal did occur via the circuit court's ruling, namely, the Board considered factors beyond the statutory directives for assessing the property. Board appeals.

### DECISION

Inasmuch as the circuit court ruled the Board was not in compliance with legislative directives, we ordinarily would ascertain if that decision was clearly erroneous. *Kindsfater v. Butte County,* 458 N.W.2d 347 (S.D. 1990). As the gist of this matter concerns the interpretation of the assessment statutes and State Constitution, a question of law, fully reviewable by this Court, must be decid-

---

1. Hereinafter, we will refer to all Telkamp property collectively as a single tract of land.

ed. *Matter of SDDS, Inc.*, 472 N.W.2d 502, 507 (S.D.1991).

On January 18, 1992, Telkamps and Board stipulated to the following pertinent facts:

5. That all of [Telkamps'] property described in this case was property classified as agricultural property on January 1, 1991, pursuant to SDCL 10–6–31.3.

10. That the highest and best use of the subject properties is for commercial, industrial, or residential development.

12. That the highest and best use of the subject property is not an agricultural use of that property.

15. That the subject property will never again be sold for agricultural purposes.

18. That the values placed upon the subject properties by the South Dakota Board of Equalization is [sic] an accurate representation of what the subject properties would sell for commercial, industrial, or residential purposes.

These written and signed stipulations are binding. *In re Estate of Eberle*, 505 N.W.2d 767 (S.D.1993). Prior to the stipulation date, most of the Telkamp property had been sold for commercial development. Wal–Mart, for example, purchased 9.6 acres at $21,562 per acre. Although the Telkamps continued to use the remaining acres for farmland, the Board assessed the acreage, due to its highest and best use, at a rate higher than other farmland in Brookings County. SDCL 10–6–33.6 provides authority for this differentiation in assessment:

If the median value per acre *in an identifiable region within a county* deviates by more than ten percent from the county average, the county director of equalization may establish a separate market value per

acre for the land defined by the director of equalization within that region. (Emphasis added.)

Finding the sales of Telkamp land to be well above the ten percent deviation from the county average, the Board established a separate market value for the Telkamp land.

This statute does not stand alone, however. Initially, all property must be assessed at its "true and full value." SDCL 10–6–33; *Roseland v. Faulk County Bd. of Equal.*, 474 N.W.2d 273, 274 (S.D.1991). This is "the usual cash selling price at the place where the property to which the term is applied shall be at the time of the assessment." SDCL 10–6–1(6). In other words, it is the price a purchaser willing, but not obligated to buy, would pay to an owner willing, but not obligated, to sell. Such a price is determined through "comparative sales." *Mortenson v. County of Stanley*, 303 N.W.2d 107, 109 (S.D. 1981); *County of Butte v. State Board of Equalization*, 263 N.W.2d 140 (S.D.1978).

SDCL 10–6–33.1 [2] supplies the criteria for determining "comparative sales" in the assessment of agricultural property. Beryle Sessions failed to utilize this statute in assessing the Telkamp land. Rather, the highest and best use of the Telkamp land was distinguished from the highest and best use of farmland located outside the city limits. This is understandable as the statute seems to pertain only to land with agriculture as its highest and best use. *See Codington County Bd. of Comm'rs v. Bd. of Equalization*, 433 N.W.2d 555, 558 (S.D.1988) (SDCL 10–6–33.1 does not apply to nonagricultural property). The highest and best use of the Telkamp land is nonagricultural, and they know it and profit from it.

**2.** At the time of the assessment, SDCL 10–6–33.1 read:

*The true and full value in money of agricultural land,* as defined by § 10–6–31, which has been in primarily agricultural use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be the market value as determined for each county through the use of all comparable sales of agricultural land based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;

(2) The soil, terrain and topographical condition of the property; and

(3) The use of the land as designated by the United States department of agriculture's agricultural stabilization and conservation service as cropland or grassland.

The *comparable sales* that are used shall be evidenced by an instrument recorded with the register of deeds of the county in which the land is located, if the date of such instrument and the recording date is not more than two years prior to the assessment year. (Emphasis added.)

■ Board further asserts that the land's proximity to commercial development is also a factor in determining comparative sales. In 1989, however, the Legislature explicitly eliminated language from SDCL 10–6–33.1 indicating that location was a factor. Nonetheless, the Board did not err in calculating the true and full value based upon the highest and best use as stipulated by the Telkamps.

According to SDCL 10–6–31, agricultural property includes:

all property *used exclusively for agricultural purposes* which is not handled for resale by wholesale or retail dealers. It includes all land *used exclusively for agricultural purposes,* both tilled and untilled, the improvements on such land, other than buildings and structures, and the livestock and machinery located and used on such agricultural land. (Emphasis added.)

The key phrase, "used exclusively for agricultural purposes," refers to the primary and inherent use of the land. *Nielsen v. Erickson,* 272 N.W.2d 82 (S.D.1978); Application of Veith, 261 N.W.2d 424 (S.D.1978). Telkamps stipulated away agriculture as the primary and inherent use of the land. Though the parties agree that the land is agricultural land per SDCL 10–6–31.3, they also agree that the Telkamps will not sell it for agricultural purposes. Rather, they will use it as farmland only until it can be sold for commercial, industrial, or residential development. Thus, the property in question is not "being used exclusively for agricultural purposes," rather, it is being held solely for investment purposes. In essence, the Telkamps have stipulated away their case. Sessions' assessment comports with statutory directives.

By our holding herein, it is not our intent to penalize or force out those individuals whose acreage is in the proximity of commercial development, yet earnestly desire to continue farming, which they have a right to do. SDCL 21–10–25.1 expresses in part: "It is the policy of the state to conserve, protect and encourage the development and improvement of its agricultural land for the production of food and other agricultural products." The Telkamp policy, per stipulation, was to encourage the development and improvement of commercial development while trying to assert the lower tax rates of agricultural land. We cannot condone this.

■ Although we have reinstated the Board's assessment, we find it important to address the Board's briefed issue that the State Constitution does not permit any special treatment of agricultural land for *assessment* purposes. We agree that the State Constitution, particularly Article VIII, § 15, specifically authorizes a separate tax classification for agricultural property regarding schools. However, we find no merit in the argument that the Constitution does not authorize different rates on agricultural land levied for county or municipal purposes. Article XI, § 2 empowers the Legislature to divide all property into classes for taxation purposes. The Legislature has done so. *Codington County,* 433 N.W.2d at 557; *Kindsfater,* 458 N.W.2d at 350; *Matter of Refusal of State Bd. of Equalization to Hear Appeal of Lake Poinsett Area Dev. Ass'n,* 330 N.W.2d 754, 758 (S.D.1983) ("[T]his court has consistently held to the uniformity within the class rule"). Numerous statutes cited herein clearly demonstrate that agricultural land is a distinct entity subject to its own classification for taxation purposes.

For a century, this Court has interpreted the State Constitution. Though the Constitution does not specifically authorize different levels of assessment for agricultural versus nonagricultural property, the authorization may be reasonably inferred. According to page 22 of the Board's brief: "The amount of taxes an individual pays on a parcel of property is a result of the multiplication of the *assessed value* times the *rate of taxation.*" (Emphasis original.) By its own advocacy, the assessment serves to determine tax liability. Where the Constitution permits different classes and different tax rates, different levels of assessment are reasonable and logical.

Reversed and remanded.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST and SABERS, JJ., concur specially.

SABERS, Justice (concurring specially).

I concur except for the dicta in the last two paragraphs of this opinion concerning special treatment of agricultural land for assessment purposes under the state constitution.

WUEST, J., joins this special writing.