TIDBALL, Respondent, v. MILLER, et al, Appellants

(32 N. W.2d 683.)

(File No. 8962. Opinion filed June 4, 1948.)

**N. E. Wanous,** State's Atty., of Dupree, and **Williamson & Williamson,** of Aberdeen, ·for Appellants.
**Morrison & Skaug,** of Mobridge, for Respondent.

HAYES, J.   From a determination of the assessed valuations to be placed upon a considerable number of his tracts of land in 1945 by the board of equalization of Ziebach County respondent Tidball appealed to circuit court.   After

a prior appeal to this court, 71 S. D. 442, 25 N. W.2d 554, and upon rehearing in 71 S. D. 552, 27 N. W.2d 587, the court entered judgment substantially reducing the valuations fixed by the board. A history of this litigation and a general outline of the facts before us on this appeal are found in the former opinions. The sole question we are now called upon to decide is whether there is competent evidence in the record sufficient to support the findings and judgment of the trial court fixing the values of the property involved.

With the exception of a few tracts to the west and in adjoining townships, the land holdings of respondent lie in irregular groupings in the range of townships north of the town of Dupree and along the western boundary of Dewey County. Respondent has made his home in this area for a long period of years and has been and now is engaged in raising livestock and conducting operations generally incident to ranching in that part of the state. The lands involved in this controversy are parts of his range or grazing areas. Some portions thereof are described as reasonably level and productive of good stands of grass and hay in seasons when moisture is sufficient. Other areas are more or less rough and rolling suitable only for grazing. Some parts of respondent's holdings embrace what are known as hard-pan patches, rough ranges and river breaks. The latter are of course nonproductive except for comparatively light grass growth thereon in normal years and but tend to fill out the range territory in a given area.

Over objections of counsel for the board the respondent was permitted to introduce proofs and the testimony of witnesses disclosing the price at which lands of similar character in that general area had been sold in recent years by the county after taking tax deeds and the prices last obtained for some of the remnants of rural credit holdings thereabout. Basing opinions upon their knowledge and information respecting such sales witnesses for respondent opined that the lands involved had a value in 1945 of $1.00 and $1.25 an acre.

Board members and witnesses called by the appellant board valued most of said lands at about three dollars an

acre and quite in line with the assessor's valuations. A few private sales of land similar to some of respondent's holdings were shown to have brought higher prices due largely to the improvements thereon. Some further testimony received by the court tended to establish the results of farming activities during recent years in the vicinity of parts of respondent's holdings and estimated the amount of hay which might have been produced at that time on some of the lands of respondent. The trial court's findings fixed the valuations of the tracts in dispute at $1.50 to $2.00 an acre, the latter figure prevailing. About 12,000 acres were valued at $21,590 or averaging approximately $1.80 per acre.

In a memorandum decision to counsel the trial court treated at some length the question of the probative value of the testimony and proofs upon which respondent Tidball relied in seeking to establish the usual cash selling price of his lands here involved. From such decision it is readily apparent that the trial court regarded as a controlling factor in fixing the value of said lands the cash price usually obtained by the county in the spring of 1945 from sales of similar lands previously acquired by the county as a result of tax sale proceedings. Such price was usually $1.00 or $1.25 per acre. Appellants contend that it was error on the part of the trial court to treat as competent evidence the proof of such sales by the county and to be guided to a decision by opinions of the value of respondent's lands based upon the knowledge of witnesses respecting such county sales. This contention brings us to a consideration of the pertinent code provisions.

■ Under SDC 57.0334 all property must be assessed at its true and full value in money. Omitting the wording of the second sentence of said section not here applicable, the same reads as follows:

"In determining the true and full value of real * * * property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which the property would sell at auction or at a forced sale, or in the aggregate with all the property in the * * * district; but he shall value each * * * description of

property by itself and at such a sum or price as he believes the same to be fairly worth in money."

By SDC 57.0301(5) it is provided that "true and full value" means "the usual cash selling price" at the time of the assessment. It is conceded that these code provisions are equally binding upon all unless the same or parts thereof are in conflict with § 2 of Article XI of our state constitution. This section of the constitution embraces a safeguard against excessive valuations for purposes of taxation and provides that the valuation of property for such purposes shall never **exceed** the actual value thereof. It was recognized by this court in Richardson v. Howard, 23 S. D. 86, 120 N. W. 768, 769, that there is a marked distiction between the term "full and true value" and the term "full and true cash value". It is not here suggested that an assessment of property "at its true and full value in money" would be in excess of its actual value. We think therefore that there is no constitutional question here presented.

In assailing the evidence of respondent it is argued by appellants that the "usual cash selling price" of respondent's property may not be determined by giving consideration to the price at which similar lands were sold by the county at that time and in that vicinity. They invoke the inhibition found in SDC 57.0334 quoted above, to-wit: "nor shall he (the assessor) adopt as a criterion of value the price for which the property would sell at auction or at a forced sale." Under SDC 57.1124 property acquired by the county by tax deed must be sold at public auction. (cf. Ch. 25, Laws of 1939, as amended). Although it does not appear that witnesses for respondent were permitted to give opinions regarding the amount likely to be realized from an auction or forced sale of respondent's property, the evidence on respondent's part was received by the court under the apparent assumption that the same would tend to establish the "usual" cash selling price of respondent's property or its fair worth in money. The decision of the trial court points to the fact that half of respondent's land involved in this action is based upon tax titles. The record before us in this case reflects the disposition of county

officials to resell lands acquired by the county as a result of nonpayment of taxes and thereafter to assess the same at valuations in excess of the prices obtained upon such resales. The law recognizes the propriety of and provides the method for returning these lands to the tax rolls. Thereafter the same must be assessed at their fair worth in money. If so assessed the purchaser from the county is afforded no ground for complaint by reason of the fact that he bought the lands at lower figures.

■■■ For all practical purposes it appears to us that the terms "true and full value in money", "usual cash selling price" and "fair worth in money" found in the provisions of our code sections numbered as above are identical and mean the sum for which the property could be exchanged under fair conditions. Tuttle v. Higgins, 174 Wis. 220, 182 N. W. 744; 51 Am. Jur., Taxation, § 701. The price at which property can be sold in the ordinary course of business is the equivalent of its fair cash value. We think, therefore, that it devolved upon the trial court to determine the fair cash value of respondent's property as of May 1, 1945, and that in making such determination no consideration could be given to the price for which the property would likely sell at auction or at a forced sale. Fair worth in money or fair cash value cannot be established by showing what the property would likely bring at sales other than in the ordinary or usual course of business.

■■■ We are of the view that the rule with respect to proof of value by evidence of sales of other property is correctly stated in Naftger et al. v. State, 24 Ohio App. 183, 156 N. E. 614, 615, as follows:

"By the great weight of authority, when the value of land is in issue, evidence of actual sales of other lands, and prices for which they were sold, is competent, if they are similar in their situation, relative position, and other circumstances relating to value, and such sales are fair and open in the market.

However, sales by sheriffs and sales that are in the nature of a compromise, or are affected by an element which does not enter into similar transactions made in the ordinary

course of business, not being a fair criterion of value, are not admissible in evidence." Numerous cases dealing with the question are collected in 118 A. L. R. 869.

■ It must be conceded that sales of lands taken by the county upon foreclosure of tax liens are affected by elements which do not enter into transactions made in the ordinary course of business. Under our system of government it is not contemplated that the governing body of the county shall acquire and hold for long periods of time large land areas within the county borders. Instead it is or ought to be the policy of the county officials as outlined by our laws to restore the property to private hands without unreasonable delay in order that the individual rather than the government shall harvest the fruits of the land. It follows as a matter of course that the execution of that policy leads to sales of so-called county lands at prices deemed sufficiently low to attract the general public. To these elements is to be coupled the recognized disposition to regard as unmerchantable the title passing from the county. We have found no authorities in support of the view that evidence of sales as last described is admissible and competent in determining the value of similar property in private hands.

In Lampe Market Co. et al. v. Alliance Ins. Co., 71 S. D. 120, 22 N. W.2d 427, 428, this court approved an instruction embracing considerations to be taken into account in determining the "actual cash value" of a building damaged by fire. A part of said instruction we deem particularly applicable here is as follows:

"You should also take into consideration the amount for which the property would sell for cash at a fair sale in the usual course of business; that is, the amount for which the property would sell at a sale in which the seller was not forced to sell but in which he was ready and willing to sell and the purchaser was not forced to buy but was ready and willing to buy."

■ We conclude that it was improper for the trial court to determine the value of respondent's property by the application of a yardstick or standard of value closely adjusted to fit the selling prices of similar lands at what are

commonly called county sales. The judgment should be and is reversed.

ROBERTS, P.J., and SICKEL, J., concur.

RUDOLPH, J., concurs specially.

SMITH, J., not sitting.

RUDOLPH, J. (concurring specially). SDC 57.0334 provides that the assessor in making the assessment shall not "adopt as a criterion of value the price for which the property would sell at auction or at a forced sale." SDC 57.1124 provides that all sales by the county of the property acquired by tax deed "shall be made under the direction of the county auditor at public auction to the highest bidder * * *." See also Ch. 25, Laws of 1939, as amended by Chapters 37 and 38, Laws of 1941 and Ch. 34, Laws of 1943. These laws appear in the code chapter on Taxation, and there is no reason to believe that the term "auction" as used in SDC 57.0334 was not intended to include the sale at auction required by SDC 57.1124. It is my opinion, therefore, that the trial judge was in error when, as stated in his opinion, he used as "one of the controlling factors" in fixing valuations the sale price the county received for lands it had acquired under tax deed.

I concur in the reversal of the judgment.