# RE APPEALS OF MARVIN V. JEPSEN, VICTOR T. JEPSEN, H. F. FELLOWS, WECCO, INC., AND CHESTER W. AND MARGARET E. RUSSELL

(80 N.W.2d 76)

(Files Nos. 9549-9553.   Opinion filed December 20, 1956)

Rehearing denied March 11, 1957

**Leonard E. Morrison** and **Robert W. Gunderson,** Rapid City, for Rapid City and Pennington County, Defendants and Appellants.

**Bangs & McCullen** and **H. F. Fellows,** Rapid City, for Plaintiffs and Respondents.

RUDOLPH, J. These cases are appeals from the Circuit Court of Pennington County reducing the assessment for taxation of certain property in Rapid City. The city and county boards of equalization had refused any reduction in the assessment and the taxpayers appealed to the circuit court. The city and county have now appealed to this court.

In 1952 Rapid City entered into a contract with J. L. Jacobs and Company of Chicago to assist the City Assessor and the City Commission in the appraisal and equalization of assessments of property in Rapid City. The Jacobs Company entered upon its work and after consultation and with the advice of an advisory committee appointed by the Mayor, the appraisal of property was made. This advisory committee was composed of business men in Rapid City who were familiar generally with real estate conditions and market values in Rapid City. Most of the work of the committee related to the value of the land, but it functioned to some extent with the valuation of buildings. However, the valuation of the buildings was determined largely by a manual worked out for the city by the Jacobs Company. The buildings were all measured, classified as to construction and other details and a formula prescribed by the manual applied. It appears that the value of all property in Rapid City was based by the assessor upon the appraisal made by the Jacobs Company.

The value as determined by the Jacobs Company was reduced by the assessor to 37% thereof, and such value as fixed by the assessor became the appraised value of the property in Rapid City for taxation purposes.

At the trial in circuit court the protesting taxpayers introduced evidence of the "true and full value in money" of their property, which in all instances was substantially below the value placed thereon by the Jacobs Company and in some instances lower than the assessed valuation. The city and county introduced no evidence of the value of the property other than the value placed thereon by Jacobs, and the assessor's value which was 37% thereof.

Article XI, § 2 of the Constitution of South Dakota provides in part, "Taxes shall be uniform on all property of the

same class, * * *" and the valuation of property for taxation purposes shall never exceed the actual value thereof. SDC 57.0334 provides: "All property shall be assessed at its true and full value in money." " 'True and full value' " is defined by SDC 57.0301, as "the usual cash selling price at the place where the property to which the term is applied shall be at the time of the assessment." SDC 57.0406 empowers the county equalization board to correct mistakes or gross inequalities made by the assessor. "Gross inequality" as used in this section means, "where adjoining property of the same class is assessed at a much higher or lower amount, according to its value, than other adjoining property in the same assessment district, * * *".

■ Giving effect to these constitutional and statutory provisions we have held that where property is assessed at more than its actual value the taxpayer is entitled to relief though there is no proof that a reduction is necessary to effect uniformity with other property of the same class. Williams v. Stanley County, 69 S.D. 118, 7 N.W.2d 148. We have also held the taxpayer is entitled to relief where property is assessed at more than "its true and full value in money." Tidball v. Miller, 72 S.D. 243, 32 N.W.2d 683. We have also held that a taxpayer is entitled to relief, without regard to "actual value" or "true and full value in money" if the assessment lacks uniformity and is grossly inequitable. In re Robinson, 73 S.D. 580, 46 N.W.2d 908. If discrimination exists the remedy of the taxpayer is the reduction of his valuation to such an amount as may be necessary to remove the discrimination. Chicago, R. I. & P. Ry. Co. v. Young, 60 S.D. 291, 244 N.W. 370.

The trial court by its findings simply found the value of the taxpayers' property in accord with their testimony which it reduced to 37% for the purpose of determining the appraised value for taxation. By its memorandum opinion the court stated in substance that the Jacobs' valuations must be determined to be the true and full value in money of all property in Rapid City unless the contrary appears from the evidence. That the only evidence to the contrary was that produced by the taxpayers relating to their property, and therefore it was essential to uniformity to reduce the value

of the taxpayers' property as found by the court to 37% thereof since the Jacob's valuations of other property in the same class were reduced to 37%.

We consider first the opinion of the trial court concerning the Jacobs' valuations and the issue of "true and full value in money." In Tidball v. Miller, supra, we held that this term " 'true and full value in money' " means the price at which property can be sold in the ordinary course of business.

■ It appears that the City Assessor died in February 1952, prior to the contract with Jacobs, and no assessor qualified during the time in question. Those who purported to act as assessor never viewed the property but simply accepted the Jacobs' appraisal. Under these circumstances there is no presumption that the assessor's values are correct or reflect the "true and full value in money" of the property. See Ahern v. Board of Equalization of County of Richardson, 160 Neb. 709, 71 N.W.2d 307; Clark v. Lucas County Board of Review, 242 Iowa 80, 44 N.W.2d 748; Gamboni v. County of Otoe, 159 Neb. 417, 67 N.W.2d 489.

No representative of Jacobs testified to the method used to make the determination of the value of the land but a member of the advisory board testified that rental values of the property figured in this determination although he had made no independent investigation of his own to determine just what these rental values were. Jacobs made the investigation and determined after consulting with the advisory board that land facing on Main Street in Block 84, original townsite, should carry the highest valuations, which was determined to be $800 a front foot. This was the 100% block. The land values in the other blocks of the business section were determined to be something less than those in the 100% block but the record does not disclose the facts upon which this determination was based.

As to the structures, as above stated, they were measured, classified and the rule prescribed by the manual applied. No representative of Jacobs testified as to the basis upon which the formulae prescribed by the manual were determined. A former employee of Jacobs, now a city employee,

testified as to the application of the formulae to different structures in the city, but whether these formulae were reasonable or had any real relation to the true and full value of the property in money, is in no way established. We conclude, therefore, that under this record the Jacobs' valuations had no real probative effect upon the issue of the true and full value in money of the protesting taxpayers' property or any other property in Rapid City.

■ There was no attempt by the taxpayers to show that the true and full value of their property as established by their evidence was grossly inequitable when compared with the assessed valuation of other property of the same class. We find no basis upon which to reduce this value to 37% thereof as was done by the trial court. Apparently the trial court was of the opinion that since the Jacobs' valuations had been reduced to 37%, to establish uniformity, the determined value of the taxpayers' property should also be reduced to 37%. But as indicated above, it was not established that the Jacobs' valuations were based upon the price at which the property could be sold in the ordinary course of business. It follows that the Jacobs' appraisal of other property bore no real relationship to the valuation of the taxpayers' property as found by the trial court. To reduce the true and full value of the taxpayers' property to 37%, simply because the assessor had reduced all property to 37% of the Jacobs' appraisal, is neither logical nor justified under this record.

True, in the Iowa and Nebraska cases above cited, the valuations as found by the trial court were reduced to 60% thereof in Iowa and 50% in Nebraska. But this reduction was because of statutory provisions requiring that property be assessed at 60% of its value in Iowa and 50% in Nebraska. Code of Iowa, 1954, Sec. 441.13; Revised Statutes of Nebraska, 1955 Cumulative Supplement, Sec. 77-201. This state, as set out above, requires that property be assessed at its true and full value in money.

Nothing herein should be construed as holding that the whole assessment as made is void, or that having professional appraisers view the property and aid the assessor in establishing values is improper if properly pursued.

The judgment appealed from is reversed with directions to the trial court to reduce the assessed valuation of the taxpayers' property as made by the assessor to its true and full value in money as disclosed by the taxpayers' evidence in all instances where this value is less than the appraised value as returned by the assessor.

All the Judges concur.