CODINGTON COUNTY BOARD OF
COMMISSIONERS, Codington
County, South Dakota, Appellee,

v.

STATE of South Dakota, State BOARD
OF EQUALIZATION, Appellant.

No. 15960.

Supreme Court of South Dakota.

Argued March 21, 1988.

Decided Dec. 14, 1988.

R.L. Ericsson of Ericsson, Ericsson &
Leibel, Madison, Roger W. Ellyson, Jr.,
Codington County State's Atty., Water-
town, on brief, for appellee.

Robert J. Wagner, City Atty., Water-
town, and John P. Dewell, Asst. Atty. Gen.,
Pierre, for appellant.

HENDERSON, Justice.

TAX APPEAL/PROCEDURAL HISTORY

The Codington County Board of Commis-
sioners (County) appealed a decision of the
State Board of Equalization (State) reduc-
ing, by 19%, the assessed value, for tax
purposes, of all properties within the City
of Watertown (City). Upon a de novo con-
sideration of the record, the circuit court
reversed, holding that the State had no
authority to make such a reduction where
the questioned assessments did not exceed
"true and full value." Thereby, the circuit
court reinstated the original assessments
by County. State appeals, arguing that the
court either erred in disallowing the roll-
back of City values, or, if correct regarding
City values, should have increased the as-
sessed values of agricultural land to equal-
ize valuation between the different classes
of property.

We reverse. We reinstate the order of
the State Board, which reduced the City's
assessments, on the grounds that the Coun-
ty failed to substantially comply with statu-

tory requirements pertaining to valuation of agricultural property.

## FACTS

In 1977, City hired an appraisal firm to reassess all real property within its boundaries. The new appraisals, completed in 1979, resulted in a 45% increase in appraised values, and formed the basis for City's assessments of real property for tax purposes. During this period, assessments of agricultural land and farm houses were increased 10% and 15%, respectively.

In 1980, City's assessor raised his assessments of real property by 10% to account for inflation, and asked County to reduce the assessments by 35% to equalize disparity between City's assessments and those in other localities within the County. County declined the request, and rolled back City's assessments by only 15%, a decision unanimously affirmed by the State on July 29, 1980. In 1981, City's assessor again raised assessments by 10%, and County reduced City's assessments by 25%. In 1982, County reduced City assessments by 18%, and increased assessments of agricultural properties by 20%. The Codington County Township Association appealed the County's raised agricultural assessments, and the State reversed County's decision. State's findings of fact in that appeal reflected the County's calculations of agricultural land values relied primarily on market sales data. The State concluded, as a matter of law, that County's overuse of market sales data regarding agricultural land values was not provided for by statute, apparently referring to SDCL 10-6-33.1.*

The City then directed its City Attorney to appeal State's decision in circuit court; however, this course was abandoned when the County agreed to limit the spread between agricultural and urban assessments to 12%. This led to City's assessments being reduced by 25% in 1983.

In 1984, the picture changed: County refused to roll back City's assessments, although the Codington County Director of Equalization asked it to reduce such assessments by 25%, a reduction which would put City's assessments in the same position relative to assessments for agricultural land as in 1983. City appealed to State, which reduced City's assessments by 19%, bringing City and agricultural property assessments into the same relative position as they had averaged in the previous three years. County appealed to the circuit court, which reversed the State on the grounds that City had no basis for complaint when its assessments were not in excess of "true and full value." City and State appealed.

## DECISION

City and State argue, in essence, that State has authority to reduce the assessments of nonagricultural property for the purpose of obtaining equalization between agricultural and nonagricultural property. Alternatively, they posit that such equalization may be achieved by raising assessments of agricultural properties.

■ Our state constitution contains two sections which are most relevant to our inquiry:

Article VIII, § 15, provides:

The Legislature shall make such provision by general taxation and by authorizing the school corporations to levy such additional taxes as with the income from the permanent school fund shall secure a thorough and effi-

---

* SDCL 10-6-33.1 provides:

In fixing the true and full value in money of property, under the provisions of § 10-6-33, the value of agricultural land as defined by § 10-6-31, and which has been used primarily for agriculture use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10-6-33.2;

(2) Soil, terrain, and topographical condition of property;

(3) The present market value of said property as agricultural land as determined by the factors contained in subdivisions (1), (2), (4) and (5) of this section;

(4) The character of the area of place in which said property is located; and

(5) Such other agricultural factors as may from time to time become applicable.

cient system of common schools throughout the state. *The Legislature is empowered to classify properties within school districts for purposes of school taxation, and may constitute agricultural property a separate class. Taxes shall be uniform on all property in the same class.* (Emphasis added.)

Article XI, § 2, provides in part:

*To the end that the burden of taxation may be equitable upon all property,* and in order that no property which is made subject to taxation shall escape, *the Legislature is empowered to divide all property including moneys and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. Taxes shall be uniform on all property of the same class,* and shall be levied and collected for public purposes only.... Gross earnings and net incomes may be considered in taxing any and all property, and *the valuation of property for taxation purposes shall never exceed the actual value thereof....* (Emphasis added.)

Summarizing, this constitutional framework determines that (1) the burden of taxation of all property is to be equitable, S.D. Const. art. XI, § 2, (2) agricultural and nonagricultural property may be separated into distinct classes for tax purposes, S.D. Const. art. VIII, § 15, (3) valuation of property is not to exceed its actual value, S.D. Const. art. XI, § 2, and (4) taxation is to be uniform on all property in the same class. S.D. Const. art. VIII, § 15; S.D. Const. art. XI, § 2. This Court, in 1937, rejected a railroad's claims that separate classification and a cap on mill rates for agricultural property were unconstitutional under S.D. Const. art. XI, § 2 (uniformity clause), and the Fourteenth Amendment to the United States Constitution:

This court in 1929 could see no proper distinction between agricultural land and other real estate for the purposes of school taxation. However, in 1923 and again in 1931 the State Legislature saw a distinction, and in 1930 the people of this state saw the distinction so plainly that they were willing to write it into the Constitution of this state. [See the last two sentences of art. VIII, § 15.]

*Great N. Ry. Co. v. Whitfield,* 65 S.D. 173, 182–83, 272 N.W. 787, 791–92 (1937) (overruling *Simmons v. Ericson,* 54 S.D. 429, 223 N.W. 342 (1929)). This Court, in *Great N. Ry.,* added that it could not "say that it is unreasonable for the Legislature to conclude that agricultural land cannot bear the same burden in relation to school taxes as other land." *Id.,* 65 S.D. at 184, 272 N.W. at 792. The history behind S.D. Const. art. VIII, § 15, is set out in *In re Appeal from Refusal of State Bd. of Equalization to Hear Appeal of Lake Poinsett Area Dev. Ass'n,* 330 N.W.2d 754, 758 (S.D.1983), wherein this Court held that "the South Dakota Constitution does not require uniformity of taxation between classes of property as well as within property classes." *Lake Poinsett, id.* "'Boards of equalization have traditionally been created primarily to set a norm for equalizing assessments of property so that inequities will not result between taxpayers whose properties are in the same class.'" *Id.* (quoting *Rapid City Area Sch. Dist. v. Pennington County Auditor,* 284 N.W.2d 308, 311 (S.D.1979)). We can safely express that, as a general rule, there is no constitutional requirement for equalization between agricultural and nonagricultural property.

We view the statutory structure erected by the legislature regarding tax assessments and equalization as containing no provisions for equalization between property classes, as such. "[T]his court has consistently held to the uniformity within class rule." *Lake Poinsett,* 330 N.W.2d at 758 (citations omitted). We note that the legislature has acted upon its authority to classify agricultural property separately. SDCL 10–6–31 (directing assessors to designate all assessed property as either agricultural or nonagricultural). Further distinction is evidenced in the legislature's determination that the assessed value of

agricultural property is to be measured differently from nonagricultural property, as reflected in SDCL §§ 10–6–33 and 10–6–33.1, which read:

SDCL 10–6–33. *Basis for determining valuation for tax purposes—Forced sale value not to be used.* All property shall be assessed at its true and full value in money but not more than sixty percent of such assessed value shall be taken and considered as the taxable value of such property upon which the levy shall be made and applied and the taxes computed. In determining the true value of real and personal property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which the property would sell at auction or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description by itself and at such a sum or price as he believes the same to be fairly worth in money.

SDCL 10–6–33.1. *Factors considered in determining value of agricultural land.* In fixing the true and full value in money of property, under the provisions of § 10–6–33, the value of agricultural land as defined by § 10–6–31, and which has been used primarily for agriculture use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;

(2) Soil, terrain, and topographical condition of property;

(3) The present market value of said property as agricultural land as determined by the factors contained in subdivisions (1), (2), (4) and (5) of this section;

(4) The character of the area of place in which said property is located; and

(5) Such other agricultural factors as may from time to time become applicable.

SDCL 10–6–33 provides that all property is to be assessed at its "true and full value in money." However, SDCL 10–6–33.1 sets out five factors to be considered in assessing agricultural property, a procedure not applicable to nonagricultural property. To the degree that appellants base their allegation of unfair discrimination on variation between the ratios of sales prices to assessed values regarding agricultural and nonagricultural property alone, their argument is without merit, as SDCL 10–6–33.1 indicates that true and full value of agricultural property is determined by reference to four additional factors.

The City and State argue that equalization between classes is allowed by SDCL 10–11–28, which provides:

*Equalization of assessments between districts—Percentage change in classes of property.* Such county board of equalization shall equalize the assessment of all real and personal property between the several assessment districts of the county having local boards of equalization. It shall raise or lower, if necessary, each class of property upon a percentage basis covering such class as a whole within such assessment district.

This statute does not authorize equalization between classes as such; rather, it authorizes equalization of property between districts. The dichotomy between classes, established in SDCL 10–6–31, and extended to assessments in SDCL §§ 10–6–33 and 10–6–33.1, must be considered in conjunction with SDCL 10–11–28. Agricultural and nonagricultural valuations are not comparable. Again, uniformity within class is the rule. *Lake Poinsett*, 330 N.W.2d at 758.

■ City and State, however, also argue that County ignored the statutory factors for assessing the value of agricultural property, an allegation substantiated by the deposition of Brad Blinsmon, the Director of Equalization for Codington County. Blinsmon's deposition indicated that County refused to apply the five statutory factors in SDCL 10–6–33.1. While it is true that "[e]xact uniformity and mathematical

accuracy in valuations are absolutely impossible," *Sioux Falls Savings Bank v. Minnehaha County*, 29 S.D. 146, 164, 135 N.W. 689, 692 (1912), there must be substantial compliance with the legislative directives on valuation of agricultural property. *Lake Poinsett*, 330 N.W.2d at 760; *Mortenson v. County of Stanley*, 303 N.W.2d 107, 112 (S.D.1981). SDCL 10-6-33.1 was not followed here, according to Blinsmon.

The circuit court did not reach the question of County's noncompliance with SDCL 10-6-33.1, as it rested its decision on the undisputed facts that no inequality existed between members of the same class, and that all property had been assessed below its true and full value (Finding of Fact No. XI). The trial court should not have stopped there; it should have proceeded to consider the methods used in assessing agricultural property, as this Court did in *Lake Poinsett*, 330 N.W.2d at 759–61.

■ While there is a presumption that a county director of equalization's valuations are correct, see *Mortenson*, 303 N.W. 2d at 110, that presumption was obliterated here by Director Blinsmon's deposition. Although an effort was made to assess City's nonagricultural property at levels approaching true and full value, no equivalent attempt was made in 1984 regarding agricultural property assessments. County ignored Blinsmon's recommendations, which, unlike the actual agricultural assessments, were based on SDCL 10-6-33.1 factors. In this situation, the State was correct in concluding, as a matter of law, that County failed to properly assess property and that its failure to reduce City's assessments was arbitrary and capricious. To follow statutory directions regarding one class of property but not another is contrary to our constitution's mandate, quoted above, that the burden of taxation is to be equitable for all property. S.D. Const. art. XI, § 2. Although taxing officers often "absolutely disregard the clear mandate of the law in placing values upon property for taxation purposes, but that is no reason why the courts of this state should connive at such acts or become ac-

tive parties thereto." *Sioux Falls Savings Bank*, 29 S.D. at 160, 135 N.W. at 691. This Court then wrote:

> [W]e are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power.

*Sioux Falls Savings Bank*, 29 S.D. at 165, 135 N.W. at 693 (quoting *Cummings v. Merchants' Nat'l Bank*, 101 U.S. 153, 25 L.Ed. 903 (1880)).

County's argument, which was accepted by the trial court, is that City has no grounds for complaint because its assessments are below true and full value. *See Hansen v. Wilder*, 76 S.D. 438, 80 N.W.2d 306 (1957). *Hansen* did not involve violation of constitutional and legislative directives regarding assessment of one class of property as opposed to another class, as it concerned allegedly unfair treatment within a class. The holdings of courts should be read in light of the facts before the court for consideration. *Sioux Falls Savings Bank*, 29 S.D. at 167, 135 N.W. at 694. "[U]niformity and equality of taxation required by law is preferred over the standard of true value, when both cannot be secured." *Baken Park v. Pennington County*, 79 S.D. 156, 160, 109 N.W.2d 898, 900 (1961). *See also Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923). Even in the context of discrimination within a class, a taxpayer is entitled to relief "without regard to 'actual value' or 'true and full value in money' if the assessment lacks uniformity and is grossly inequitable." *In re Jepsen*, 76 S.D. 421, 423, 80 N.W.2d 76, 77 (1956).

As to the appropriate remedy, SDCL 10-11-28 provides for equalization between districts by raising or lowering classes of property within districts, when necessary. This statutory language encompasses the

corrective action taken by the State board in lowering City's assessments by 19%. The necessity, in this case, is provided by the failure of County to conform to SDCL 10–6–33.1.

State properly reduced City's assessments. According to our holding in *Lake Poinsett,* this was the only remedy City could legitimately pursue, for our courts lack jurisdiction to hear an appeal to correct the valuation of property of one other than the complainant. *See Lake Poinsett,* 330 N.W.2d at 756 (interpreting SDCL 10–11–42). We hold that it is therefore unnecessary to consider County's assertion that the only remedy available was the increase of agricultural property assessments.

As the City established that County had violated SDCL 10–6–33.1, the circuit court is reversed, and the State's order reducing City's assessed valuations by 19% is reinstated.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (specially concurring).

I would straight out reverse the trial court because the power of the State Board of Equalization is not limited to the equalization of assessments "within classes of property." The State Board can equalize "between classes of property," i.e., between Ag and Non–Ag property.

SDCL 10–11–25 and 10–11–28 give the County Board of Equalization the power to equalize between different assessment districts and between different classes of property. SDCL 10–11–28 provides:

Such county board of equalization shall equalize the assessment of *all real* and personal *property* between the several assessment districts of the county having local boards of equalization. It shall raise or lower, if necessary, each class of property upon a percentage basis covering such class as a whole within such assessment district. (emphasis added).

The statute clearly allows the equalization of assessments of *all real property* —not just Ag or Non–Ag, and not just one class

at a time. The reading placed on this statute by the majority opinion is incredibly narrow. The *Lake Poinsett* case is clearly distinguishable and not controlling.

The constitutional provisions cited in the majority opinion do not prohibit this power —they merely allow for different taxable rates for different classes of property. The legislature was within its authority in providing the County Board of Equalization (and the State Board under SDCL 10–2–1.1 and 10–11–42) the right to equalize assessments between classes and districts.