In the Matter of the Tax Appeals of Marvin **KINDSFATER** and Sharee Kindsfater, Lyle H. Ruby, and Manuel Kindsfater, Taxpayers and Appellants,

v.

**BUTTE COUNTY, South Dakota, Appellee.**

No. 16797.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1990.

Decided June 27, 1990.

Joseph M. Butler and George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for taxpayers and appellants.

Richard A. Pluimer of Carr & Pluimer, Belle Fourche, for appellee.

MILLER, Justice.

In this appeal, we affirm the trial court's decision in a trial de novo in a real estate tax assessment proceeding.

## PROCEDURAL HISTORY AND FACTS

In 1987, Don McGinnis, Director of Equalization for Butte County (assessor), assessed farm land belonging to the appellant taxpayers. Those 1987 valuations were as follows:

| | |
|---|---|
| Manuel Kindsfater | $89,929.00 |
| Lyle Ruby | 41,941.00 |
| Marvin & Sheree Kindsfater | 46,069.00 |

Taxpayers appealed the 1987 value determinations to the board of county commissioners acting as a board of equalization.

Taxpayers claimed that the assessment of their land improperly included their shares of stock in the Redwater Irrigation Association. The board denied taxpayers' appeal. Taxpayers then appealed to the circuit court which ultimately issued its memorandum opinion, findings of fact, conclusions of law, and order holding that the assessment was void because the assessor failed to follow the criteria required by SDCL 10–6–33.1 [1] and our holding in *Matter of Butte County*, 385 N.W.2d 108 (S.D.1986). However, the order was later vacated by stipulation of the parties and an interim order was entered requiring a reassessment of taxpayers' land in accordance with statutory and constitutional criteria. The interim order also specifically adjudged the 1987 assessment as void.

The reassessment determined the land values to be twice that of the original 1987 assessment and were as follows:

| | |
|---|---|
| Manuel Kindsfater | $197,305.00 |
| Lyle Ruby | 94,013.00 |
| Marvin & Sheree Kindsfater | 88,603.00 |

In proceedings which everyone called a "rehearing," the trial court heard the assessment appeal de novo and entered extensive findings of fact and conclusions of law. Its findings detailed the procedures utilized by the assessor in the reassessment process and specifically found that the reassessment values (unlike the original assessment) did not assign an additional value "based upon the nature of the water right, whether lands were actually irrigated or other management practices and decision."

The trial court concluded, among other things, that although the 1987 assessment procedures were void, the procedures utilized by the assessor *in the reassessment* substantially complied with SDCL 10–6–33.1 and constitutional directives and is entitled to the presumption that the valuations were correct. It held that although the "full and true value" of taxpayers' land was as indicated by the reassessment, such values "would result in a lack of uniformity and inequitable treatment as to these taxpayers." Recognizing that equalization of assessments is contemplated in such proceedings, it reduced the values of the property to the values previously assigned by the assessor in the original 1987 assessment.

## DECISION

### ISSUE

### I

#### WAS THE TRIAL COURT'S DECISION CLEARLY ERRONEOUS?

*Scope of Review*

Taxpayers have stated its first issue as follows:

> When a real estate tax assessment has been adjudged to be void by reason of discrimination (i.e., higher than the assessment of other similar and comparable properties), the appropriate remedy is to reduce such assessment to such amount as may be necessary to remove the discrimination.

█ It is apparent that taxpayers have overlooked the appropriate standard of review in tax assessment appeals. Settled law in this state provides that our scope of review of a trial court's decision in a trial de novo of a tax assessment is to determine whether the findings are clearly erroneous. *Butte County, supra* at 110; *Mortenson v. Stanley County*, 303 N.W.2d 107 (S.D.

---

1. SDCL 10–6–33.1 provides:

The true and full value in money of agricultural land, as defined by § 10–6–31, which has been in primarily agricultural use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be the market value as determined for each county through the use of all comparable sales of agricultural land based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;

(2) The soil, terrain and topographical condition of the property; and

(3) The use of the land as designated by the United States department of agriculture's agricultural stabilization and conservation service as cropland or grassland.

The comparable sales that are used shall be evidenced by an instrument recorded with the register of deeds of the county in which the land is located, if the date of such instrument and the recording date is not more than two years prior to the assessment year.

1981); *Knodel v. Bd. of County Com'rs,* 269 N.W.2d 386 (S.D.1978); *Willow, Inc. v. Yankton County,* 89 S.D. 643, 237 N.W.2d 660 (1975); *Yadco, Inc. v. Yankton County,* 89 S.D. 651, 237 N.W.2d 665 (1975).

Nowhere in its argument on this issue have taxpayers asserted that the trial court's decision was clearly erroneous.[2] Rather, they rely on older authorities standing for the proposition that if there was a discriminatory value assessed, the appropriate remedy is a reduction in value. They cite *Appeals of Chicago and N.W. Ry. Co.,* 85 S.D. 613, 188 N.W.2d 276 (1971); *Baken Park, Inc. v. County of Pennington,* 79 S.D. 156, 109 N.W.2d 898 (1961); *In re Jepsen's Appeal,* 76 S.D. 421, 80 N.W.2d 76 (1957); *Chicago, R.I. & P. Ry. Co. v. Young,* 60 S.D. 291, 244 N.W. 370 (1932).

We see no reason to specifically reverse the authorities cited by taxpayers because in certain respects there are salient distinguishing factors. However, we reiterate that in cases such as this, we review on the clearly erroneous standard.

*Merits*

■ Taxpayers' stated issue would suggest that the trial court, in voiding the 1987 assessment, found that the assessment values were discriminatory. That is not correct! The trial court specifically held that the *assessment procedures* lacked uniformity and were discriminatory. Additionally, the trial court in requiring the reassessment specifically ordered that the assessor reassess the land according to: (1) the capacity of the land to produce agricultural products; (2) soil type, terrain, and topographical condition of the property; (3) the present market value of the property in question; (4) the character of the area or place in which said property is located; (5) such other agricultural factors as may from time to time become applicable; and (6) the irrigability of the land. As a caveat to factor (6), the circuit court stated, "[w]ith respect to irrigability, the County Assessor shall determine the irrigability based on the land's location, soil, terrain, topography, and appurtenant and nontransferable water rights...." These requirements complied with SDCL 10–6–33.1 and *Butte County, supra* at 112, wherein we stated that "tax assessment valuation of agricultural land is to be based" on those factors.

The assessor complied with the trial court's order. The trial court's findings set forth the detailed procedures followed by the assessor in the reassessment.[3] It con-

---

**2.** It is interesting to note, too, that they never really challenged the values assigned to the property—in fact two of them conceded at trial that the values were "fair." In their reply brief in explaining why they made no effort to establish true and full value of their property for the benefit of the court, they said "[t]he reason no such evidence was offered is that true and full value is not now, and never has been, the issue in this case. The issue is the lack of uniformity of assessment within the class of agricultural lands." They seem to overlook that property must be assessed at its "true and full value" (SDCL 10–6–33) and market value (SDCL 10–6–33.1).

**3.** "The procedure utilized by the county assessor for reassessment purposes was substantially as follows:

A. All lands belonging to the taxpayers were separately analyzed based upon soil type, soil productivity rating, and the number of acres of each separate soil type.

B. Soil productivity ratings were obtained from the Butte County Soil Survey, developed for Butte County by the United States Depart-

ment of Agriculture, Soil Conservation Service, in cooperation with the South Dakota Agricultural Experiment Station.

C. Factors analyzed by the soil survey include the capacity of the land to produce agricultural products, the soil type, terrain and topographical condition, presence of particular minerals, average depth of top soil, presence or absence of water table, accumulation potential for salt or other degrading minerals, permeability of the soil, and various other factors which may affect the overall productivity of the soil and its capabilities for irrigation purposes.

D. Not all soils were determined by the soil survey to be irrigable even if water was available with which to irrigate, since irrigation of some types of soil can result in decreased productivity under irrigation.

E. Comparable sales of agricultural lands occurring in the preceding year of 1986 were also utilized. The 1986 sales were utilized as the basis for development of the 1987 assessments.

F. Each comparable sale was analyzed based upon lands which, according to the soil survey, were capable of irrigation without re-

cluded that these procedures substantially complied with statutory and constitutional directives and was entitled to the presumption that the valuation was correct (noting too, that taxpayers had failed to offer any evidence to overcome the presumption).[4] We see nothing in the record to convince us that the trial court was clearly erroneous in its decision approving the reassessment values.

■ As stated earlier, the court entered its final judgment decreeing the reassessment values to be the full and true valuation of taxpayers' land *but* for equalization purposes it adopted the lower values of the original assessment concluding the same to be equitable and uniform. *See Knodel, supra,* and *Williams v. Stanley County,* 69 S.D. 118, 7 N.W.2d 148 (1942).

■ We have consistently held that in an appeal to the circuit court on a tax assessment, the court may grant the taxpayers relief if the assessment lacks uniformity and is grossly inequitable without regard to the full and true value of the property.[5] *Butte County, supra; Knodel, supra.* "[E]xact uniformity and mathematical accuracy in valuations are absolutely impossible, (citations omitted) there must be substantial compliance with the legislative directives on valuation of agricultural property." *Codington County Bd. of Com'rs v. Bd. of Equalization,* 433 N.W.2d 555, 558–59 (S.D.1988) *see also Baken Park, Inc. v. County of Pennington,* 79 S.D. 156, 109

N.W.2d 898 (1961). Uniformity and equality of taxation is preferred over the standard of full and true value when both cannot be secured. *Codington County, supra; Baken Park, supra.* "In an appeal to the circuit court, the court does not merely have power to determine whether an assessment is excessive or arbitrary, but exercises independent judicial judgment to determine valuation." *Knodel, supra* at 389.

We have also consistently adhered to the uniformity within class rule. *Codington Cty. Bd. of Com'rs, supra.* In writing for the court in *Codington Cty. Bd. of Com'rs,* Justice Henderson summarized the constitutional provisions, noting that

(1) the burden of taxation of all property is to be equitable, S.D. Const. art. XI, § 2, (2) agricultural and nonagricultural property may be separated into distinct classes for tax purposes, S.D. Const. art. VIII, § 15, (3) valuation of property is not to exceed its actual value, S.D. Const. art. XI, § 2, and (4) taxation is to be uniform on all property in the same class. S.D. Const. art. VIII, § 15; S.D. Const. art. XI, § 2.

433 N.W.2d at 557.

Here, the trial court recognized the principle of uniformity within class and appropriately set the property values at what it believed to be uniform, fair and equitable. Under the facts presented, we cannot hold that this was clearly erroneous.

---

gard to whether the lands had actually been irrigated or not.

G. Only the median sale of nine comparable sales occurring in 1986 were utilized for valuation purposes, thereby excluding the four highest and the four lowest comparable sales.

H. The soil rating of average land within the county is then multiplied by the median sale to determine the value which would be assigned to the highest rated soil in the county and the projected value of such soil. This resulted in what the assessor determined to be the 'top dollar' representing the projected selling price of the very best soils within the county.

I. The soil productivity rating of each of taxpayers' lands was assigned a dollar value per acre, based upon the rating of that soil type as a ration of the very best soil. The dollar value assigned to each acre was then

multiplied by the number of acres of each soil type.

J. The assessor also testified that he conferred with the Agricultural Stabilization and Conservation Service and the Federal Land Bank in an effort to determine facts relating to his analysis of full and true value. The assessor attempted to obtain from taxpayers' actual production records, but was not provided this information."

4. *See* Issue III for our holding dealing with the presumption of validity.

5. Dan McGinnis testified at the reassessment hearing that the method of valuation used in the reassessment was not uniform with the method applied to all other property in Butte County. The method ordered by the court was only used on the taxpayers' property. He also indicated that the statutory considerations were not used for any of the property assessed in 1987.

## ISSUE II

### WHETHER THE POSSIBILITY OF AN UNAVAILABLE SUPPLY OF WATER AFFECTS LAND VALUES WHEN SAID LAND IS THEORETICALLY "IRRIGABLE." [6]

█ In this issue, taxpayers assert that: "... 'irrigability' can have no effect upon the value of land until and unless there is irrigation water available[,]" and "[t]he water available for irrigation of the land of [taxpayers] comes from the Redwater Irrigation Canal and their right to draw such water stems, not from ownership of their land, but from ownership of stock in the Redwater Irrigation Corporation which constitutes personal property and which can be transferred separate and apart from the land."

These statements may be true, but they really are not relevant under the holding of the trial court.

As we previously recognized and held in *Butte County:*

> [T]he circuit court's determination that the actual implementation of an irrigation system is not a proper consideration [for tax assessment purposes] and that irrigated land should not be separately classified.
>
> This does not mean, however, that the land's irrigability, whether actually irrigated or not, is not a relevant consideration when assessing agricultural land value. The irrigability of land enhances its value and this Court has so recognized. *See Basin Electric Power Coop, Inc. v. Cutler,* 254 N.W.2d 143 (S.D. 1977); and *Nebraska Electric Generation & Transmission Coop., Inc. v. Tinant,* 90 S.D. 284, 241 N.W.2d 134 (1976). Thus, to the extent the land is irrigable, because of its location, soil, terrain, topography, and appurtenant and nontransferable water rights, *see* SDCL ch. 46–5, its value may be assessed appropriately. (footnote omitted) However, to the extent irrigability is already con-

sidered in the market value analysis, soil survey, etc., it should not be separately reevaluated, for double taxation based on this single factor would result.

385 N.W.2d at 112. The trial judge, complying with our holding in *Butte County,* in voiding the 1987 assessment, held that the assessor had improperly considered the shares of stock in Redwater Irrigation in setting the assessed values and had generally not followed statutory directives (as interpreted by us in *Butte County* ).

However, in the findings and conclusions now on appeal, there is absolutely no mention of the Redwater Irrigation Association or taxpayers' share therein. Rather, the court referred to the detailed procedures utilized by the assessor (see footnote 3) and concluded they were appropriate. As with Issue I, nothing submitted by taxpayers convinces us that the holding was clearly erroneous.

## ISSUE III

### WHETHER AN ASSESSMENT BY THE COUNTY ASSESSOR LOSES ITS PRESUMPTION OF VALIDITY WHEN HE/SHE FAILS TO FOLLOW THE STATUTORY COMMANDS.

█ Yes, and this is conceded by County. This is also the main reason a reassessment was ordered by the trial court with directions to comply with the statutory and constitutional requirements. We are unable to find where taxpayers allege the *reassessment* to be invalid on this basis. Further, having heretofore held that it was properly conducted, we hold it enjoys a presumption of validity. *Knodel, supra.* Any argument regarding the invalidity of the first assessment is moot because it was cured by the valid reassessment.

Affirmed.

All the Justices concur.

---

**6.** Taxpayers state the issue: "In the absence of an available supply of suitable water, the theoretical 'irrigability' of land does not affect its value." This is somewhat misleading since all of the land, although not necessarily irrigable, has access to available water, and, in fact, some of it is actually irrigated.