**Bruce ROSELAND, et al., Plaintiffs and Appellants,**

v.

**The FAULK COUNTY BOARD OF EQUALIZATION, Defendant and Appellee.**

**No. 17258.**

Supreme Court of South Dakota.

Argued April 23, 1991.

Decided Aug. 21, 1991.

Rick Johnson, Johnson, Eklund & Abour-ezk, Gregory, for plaintiffs and appellants.

James M. Cremer, Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for defendant and appellee.

WUEST, Justice.

This is an appeal by ninety-four Faulk County taxpayers of their 1988 tax assessments. These taxpayers previously appealed their assessments to the Faulk County Board of County Commissioners sitting as the Faulk County Board of Equalization. The Board of Commissioners reduced the assessments by 5%, based upon the reduced precipitation received in western Faulk County.[1] The taxpayers remained unsatisfied and appealed the decision to circuit court for a trial de novo. The circuit court approved of and adopted the five percent adjustment determined by the Board.

The taxpayers appeal to this court and contend (1) the trial court erred in refusing to rule whether or not the 1988 assessment valued their property above its actual value, (2) the assessment was not uniform as to property classified as agricultural, (3) the assessment failed to comply with statutory requirements, and (4) the assessment was inequitable. Because we reverse and remand this case on the first issue, we do

---

1. The five percent adjustment was apportioned by reducing assessments five percent in the western-most townships in the county, reducing assessments by three percent in the town- ships in Range 70, and reducing assessments in Townships in the west-half of Range 69 by two percent.

not reach the taxpayer's remaining contentions.

## FACTS

Beginning with the 1986 tax assessment, the Faulk County Director of Equalization utilized the Faulk County Soil Survey to assess agricultural land.[2] As a result, assessed values of property in the southeast corner of the county decreased, while assessed values in the northwest increased. This occurred because the soil type in the southeast is sodium affected and therefore less productive than the soil type in the west.

In 1987, certain taxpayers from western Faulk County appealed their assessments to the State Board of Equalization. On August 20, 1987, the State Board issued an opinion which upheld the use of the soil survey method, but directed the County Assessor to take into consideration rainfall, rocks, trees, sloughs and slopes, and make appropriate adjustments relative to these factors.

In the fall of 1987, the County Assessor met with a representative of the Department of Revenue and a Department consultant. A field inspection was conducted, climatic data was reviewed and the rating for various soil types was re-examined. Following this review, the rating of several soil types was adjusted downward and an overall climatic adjustment was acknowledged, based upon a one inch average precipitation difference from the middle of the county to the western part of the county. Consequently, the Department of Revenue recommended a four percent climatic adjustment be used in future assessments.

For the 1988 assessment, the County Assessor used the new soil ratings; however, based upon a letter he received from the Secretary of the Department of Revenue, he did not include a climatic factor in the assessment. The assessments which resulted form the basis of this appeal.

## DECISION

All property is to be assessed at its true and full value in money. SDCL 10-6-33. The factors considered in valuing agriculture land are set forth in SDCL 10-6-33.1:[3]

In fixing the true and full value in money of property, under the provisions of § 10-6-33, the value of agricultural land as defined by § 10-6-31, and which has been used primarily for agriculture use for at least five successive years immediately preceding the tax year for

---

2. We set forth in relative detail the soil survey method of tax assessment in order to foster a clearer understanding of the issues in this case:

Pursuant to extensive studies, soil scientists at South Dakota State University and the Soil Conservation Service determined the productive capacity of all soil types in South Dakota. These productivity analyses were based on actual yields of the various soil types as determined by Agricultural Experiment Station plots and yields reported by farmers. South Dakota soils were then collated in a rating system known as Rating South Dakota Soils According to Productivity.

The South Dakota Department of Revenue, in conjunction with soil scientists at South Dakota State University, developed the Agricultural Land Assessment Procedures Technical Guide, which combines soil productivity ratings with market values in order to value land based upon its capacity to produce agricultural products. Under the Technical Guide, the soil types in each county are arrayed according to their relative degree of productivity. The soil with the highest productivity is given a crop rating of 1.00 and all other soil types are then arrayed in their relation to the top-producing soil.

Once the productive capacity of the soils is arrayed, a dollar value is then assigned to each soil type. The dollar value is determined at a district meeting of assessors and the Department of Revenue at which the average county value per acre is derived based on the past two years' sales data. In Faulk County for 1988 the average county value was $170 an acre. This is also called the assigned value.

Once the assigned value is derived, total county value is determined by multiplying the assigned value by the total number of agricultural acres in the county. The total county value is then pro rated over the various soil types so that each soil type receives a particular value. For an individual parcel of land, the number of acres of each soil type are counted, multiplied by the value assigned to each soil type and then total value for that parcel is arrived at by adding up the values assigned to each particular soil type. Taxes are then assessed based upon the parcel's total value.

3. SDCL 10-6-33.1 was amended in 1989. 1989 S.D.Sess.L. ch. 86, § 2.

which assessment is to be made shall be based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;

(2) Soil, terrain, and topographical condition of property;

(3) The present market value of said property as agricultural land as determined by the factors contained in subdivisions (1), (2), (4) and (5) of this section;

(4) The character of the area of place in which said property is located; and

(5) Such other agricultural factors as may from time to time become applicable.

In the case of land producing crops or plants, the capacity of the land to produce agricultural products is to be based upon average yields under natural conditions. SDCL 10–6–33.2.

■ Notwithstanding the enumerated criteria of SDCL 10–6–33.1, "the valuation of property for taxation purposes shall never exceed the actual value thereof." S.D. Const. art. XI, § 2. *Accord Kindsfater v. Butte County*, 458 N.W.2d 347, 350 (S.D.1990); *Codington County Bd. of Comm'rs. v. State Bd. of Equalization*, 433 N.W.2d 555, 557 (S.D.1988).

The terms "actual value" and "true and full value" mean the "market value" of property to be assessed and market value has been defined as the price ... a purchaser willing but not obligated to

buy would pay an owner willing but not obligated to sell, taking into consideration all uses to which the property is adapted and might in reason be applied.

*Rau v. Fritz*, 81 S.D. 311, 314, 134 N.W.2d 773, 775 (1965) (*citing Sheraton–Midcontinent Corp. v. County of Pennington*, 77 S.D. 554, 95 N.W.2d 892 (1959) and *Tidball v. Miller*, 72 S.D. 243, 32 N.W.2d 683 (1948)). *See Bailey v. Megan*, 102 F.2d 651 (8th Cir.1939); *Mortenson v. Stanley County*, 303 N.W.2d 107 (S.D.1981); *Yadco, Inc. v. Yankton County*, 89 S.D. 651, 237 N.W.2d 665 (1975); *In re Appeals of Jepsen*, 76 S.D. 421, 80 N.W.2d 76 (1956); *Williams v. Stanley County Bd. of Equalization*, 69 S.D. 118, 7 N.W.2d 148 (1942). The assessor's valuations are presumed correct, *Codington*, 433 N.W.2d at 559; *Mortenson* 303 N.W.2d at 110, and appealing taxpayers bear the burden of overcoming this presumption, *Knodel v. Bd. of County Comm'rs*, 269 N.W.2d 386, 389 (S.D.1978); *Yadco*, 89 S.D. at 656, 237 N.W.2d at 668.

■ At trial, the taxpayers introduced into evidence three agricultural land sales from western Faulk County in 1987. These sales were considered "arms-length" transactions by the County Assessor and the Department of Revenue and were used in making the 1988 assessment. These sales also demonstrate that in at least three instances the assessed value of Faulk County agricultural property exceeded its actual value. We set forth the sales below:

| Date of Sale | Sale Price | 1988 Assessed Value |
| --- | --- | --- |
| 3/24/87 | $35,040 | $ 73,785 |
| 11/16/87 | $62,000 | $106,640 |
| 12/29/87 | $57,600 | $103,245 |

We find the taxpayer's evidence sufficient to overcome any presumption that the assessor's valuations were correct, particularly since these very sales were used in arriving at the 1988 assessment.

■ When excessive valuation has been shown, the property owner is entitled to relief without also demonstrating that a reduction is necessary to effect uniformity with other property of the same class. *Knodel*, 269 N.W.2d at 389; *Appeals of Jepsen*, 76 S.D. at 423, 80 N.W.2d at 77; *Williams*, 69 S.D. at 121, 7 N.W.2d at 150. The trial court made no findings or conclusions as to whether or not any of the 1988 tax assessment valuations exceeded the actual value of the land. Taxpayer's evidence quite clearly raises this issue. Ac-

cordingly, we reverse the trial court's decision for a determination on this question as to each taxpayer. Under our holding, we deem it unnecessary to address taxpayer's remaining contentions.

We reverse and remand.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

Circuit Judge Evans, who decided this case, is no longer on the Bench so another circuit court judge will be picking up the pieces in this tax appeal, to decide it under the settled law of this state.

Little heed was given to the important decisions of this state by the trial court. Rather, the domineering dictates of the South Dakota Department of Revenue, as exemplified by correspondence in this file, was elevated over the State Constitution and the previous decisions of the South Dakota Supreme Court. Also, and regretfully, the circuit court became caught up in scientific, bookworm, technical construction of land values by an assessment "Bible," which led the trial court astray.

I hope, for the sake of all South Dakota citizens, that the circuit court judges of this state begin to realize that statutes cannot change our State Constitution; that manuals cannot change our State Constitution; that assessment formulas cannot change the State Constitution. I respectfully suggest that the trial judges of this state read the language of *Kindsfater v. Butte County*, 458 N.W.2d 347, 350 (S.D.1990), written by the Chief Justice of this state and particularly page 350 thereof which quotes, with approval, *Codington County Bd. of Com'rs. v. Bd. of Equalization*, 433 N.W.2d 555, 557 (S.D.1988) as follows:

> (1) the burden of taxation of all property is to be equitable, S.D. Const. art. XI, § 2, (2) agricultural and nonagricultural property may be separated into distinct classes for tax purposes, S.D. Const. art. VIII, § 15, (3) valuation of property is not to exceed its actual value, S.D. Const. art. XI, § 2, and (4) taxation is to be uniform on all property in the same class. S.D. Const. art. VIII, § 15; S.D. Const. art. XI, § 2.

433 N.W.2d at 557.

If the trial judges of this state will use those two cases as a blueprint for future decisions, they will have at hand the law and not some bureaucratic dictates from the South Dakota Department of Revenue.

I would have reached *every issue* in this case, had this case been assigned to me, so that the new trial judge on this case would have some appellate direction in more detail. Suffice it to say, the evidence in this record grossly demonstrates that the taxpayer's property was assessed at a value in excess of its actual value. This was mistake number 1 of the previous trial court's rationale. The sales figures on the land clearly demonstrate that the trial court failed to consider recent sales of the property. Mistake number 2 was that the trial court failed to consider that the assessments violated the constitutional and statutory requirements that taxes be uniform on all property *in the same class*. Mistake number 3 was the failure of the trial court to equitably apply climatic, topographical, slope, slough, and rocky adjustments, which he, the trial court, considered de novo.

The new trial court will have to decide this case, de novo, in my opinion and I repeat: There are recent decisions which can act as a blueprint for every circuit court judge in this state. Our State Constitution, summarized in those two writings, should be the polestar for each judge as he charts his course in each taxation case coming before him or her.